E-FILED
Wednesday, 05 July, 2017  02:51:52 PM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| ALI NAQVI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS HEALTH AND SCIENCE, an | ) | |
| Illinois not-for-profit corporation, ("IHS") | ) | |
| DECATUR MEMORIAL HOSPITAL, an | ) | |
| Illinois not-for-profit corporation, ("DMH") | ) | |
| ZEVACOR MOLECULAR, a Virginia corp., | ) | **JURY DEMAND** |
| registered as a foreign corporation in Illinois, | ) | |
| ZEVACOR PHARMA, INC., a Virginia | ) | |
| corporation, registered as a foreign corporation | ) | |
| in Illinois, n/k/a GLOBAL ISOTOPES, LLC, an | ) | Case No. 17-CV-3145 |
| Illinois limited liability company, the Board of | ) | |
| Directors of IHS and the Board of Directors of | ) | |
| DMH, TIMOTHY D. STONE, JR., individually | ) | |
| and in his capacity as ex-officio member of the | ) | |
| Boards of Directors of IHS and DMH,    ROY | ) | |
| MOSSER, individually and in his capacity | ) | |
| as a director of the Boards of Directors of IHS | ) | |
| and DMH, RON DRANE, individually and in | ) | |
| his capacity as a director of the Boards of | ) | |
| Directors of IHS and DMH, ROBIN KING, | ) | |
| individually and in her capacity as a director | ) | |
| of the Boards of Directors of IHS and DMH, | ) | |
| JOHN FUNK, individually and in his capacity | ) | |
| as a director of the Boards of Directors of IHS | ) | |
| and DMH, SCOTT FREDERICKSEN, | ) | |
| individually and in his capacity as a director of | ) | |
| the Boards of Directors of IHS and DMH, and | ) | |
| KEN SMITHMIER, individually and in his | ) | |
| capacity as an ex-officio member of the Boards | ) | |
| of Directors of IHS and DMH. | ) | |
| | ) | |
| Defendants. | | |

## **COMPLAINT**

COMES NOW the Plaintiff, ALI NAQVI, ("NAQVI") by his attorneys, Costigan

& Wollrab, P.C., and for his Complaint against the Defendants, ILLINOIS HEALTH and

SCIENCE, an Illinois not-for-profit corporation, ("IHS"), DECATUR MEMORIAL

1

HOSPITAL, an Illinois not-for-profit corporation, ("DMH"), ZEVACOR PHARMA, INC., n/k/a ZEVACOR, a Virginia corporation registered as a foreign corporation in Illinois and doing business in Illinois, and ZEVACOR MOLECULAR, a Virginia corporation registered as a foreign corporation in Illinois and doing business in Illinois and n/k/a GLOBAL ISOTOPES, LLC, an Illinois limited liability company (collectively referred to hereafter as "ZEVACOR"), the Boards of Directors of IHS and DMH, TIMOTHY D. STONE, JR., ROY MOSSER, RON DRANE, ROBIN KING, JOHN FUNK, SCOTT FREDERICKSEN, and KEN SMITHMIER, individually and in their respective capacity as directors and ex-officio members of the Boards of Directors of IHS and DMH hereby states the following:

## JURISDICTION

1. Jurisdiction is proper pursuant to 28 U.S.C. §1331 (2012) as NAQVI's claims arise under the Constitution, laws or treaties of the United States. In particular, NAQVI's claims are being brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000 e-2-3.

2. Additionally, this Court has jurisdiction of the state law claims asserted herein on the basis of its exercise of ancillary jurisdiction.

## VENUE

3. Venue is proper pursuant to 28 U.S.C. §1391(b), in that the claims arose in Macon County and in this district as alleged below.

## PARTIES

4. At all times relevant to the matters set forth in this Complaint, NAQVI was a resident of Macon County, Illinois.

2

5.    During all times relevant to the matters set forth in this Complaint, NAQVI was the Executive Vice President and Chief Financial Officer of IHS, DMH, and ZEVACOR.

6.    At all times relevant to the matters set forth in this Complaint, IHS was an Illinois not-for-profit corporation situated in and offering services in Macon County, Illinois.

7.    At all times relevant to the matters set forth in this Complaint, DMH was an Illinois not-for-profit corporation situated in and offering services in Macon County, Illinois.

8.    At all times relevant to the matters set forth in this Complaint, ZEVACOR PHARMA, INC., n/k/a ZEVACOR, a Virginia corporation, ("ZEVACOR PHARMA") was licensed in Illinois as a foreign corporation and was conducting business in Macon County, Illinois.

9.    At all times relevant to the matters set forth in this Complaint, ZEVACOR MOLECULAR n/k/a GLOBAL ISOTOPES, LLC an Illinois limited liability company, was conducting business in Macon County, Illinois.

11.    At all times relevant to the matters set forth in this Complaint, IHS and DMH were governed by various boards of directors and committees, including but not limited to the Boards of Directors of IHS and DMH.

12.    At all times relevant to the matters set forth in this Complaint, the Boards of Directors of IHS and DMH proscribed rules, regulations, policies, directives and procedures to govern the operations of IHS, DMH and their subsidiaries.

13.     At all times relevant to the matters set forth in this Complaint and until approximately November 5, 2015, TIMOTHY D. STONE, JR. ("STONE") served as Executive Vice President and administrator of DMH. Thereafter, on or about November 6, 2015, STONE was named President and Chief Executive Officer of DMH. Additionally, STONE served as an ex-officio member of the Board of Directors of DMH.

14.     At all times relevant to the matters set forth in this Complaint, ROY MOSSER was Chairman of the Boards of Directors of IHS and DMH. Additionally, ROY MOSSER was a supplier to DMH.

15.     At all times relevant to the matters set forth in this Complaint, RON DRANE was a director on the Board of Directors of ZEVACOR. Additionally, the financial institution that primarily employed RON DRANE provided financing to DMH.

16.     At all times relevant to the matters set forth in this Complaint, ROBIN KING was a director on the Boards of Directors of IHS and DMH.

17.     At all times relevant to the matters set forth in this Complaint, JOHN FUNK was a director on the Boards of Directors of IHS and DMH.

18.     At all times relevant to the matters set forth in this Complaint, SCOTT FRIEDRICKSEN was a director on the Board of Directors of IHS.

19.     At all times relevant to the matters set forth in this Complaint, KEN SMITHMIER was the President and Chief Executive Officer of DMH, IHS and ZEVACOR.  Additionally, KEN SMITHMIER was an ex-officio member of the Boards of Directors of IHS and DMH.

4

20.    At all times relevant to the matters set forth in this Complaint, DMH also had a Board of Directors who oversaw operations of DMH and the aforementioned directors also served on the Boards of Directors of IHS, DMH and ZEVACOR.

21.    At all times relevant to the matters set forth in this Complaint the Boards of Directors of IHS and DMH were situated in Macon County, Illinois; and held their meetings and oversaw operations of DMH in Macon County, Illinois.

## COUNT I

### TITLE VII CLAIMS OF RACIAL DISCRIMINATION, DISPARATE TREATMENT AND HOSTILE WORK ENVIRONMENT

NOW COMES Plaintiff, ALI NAQVI, and for Count I of his Complaint alleged against Defendants, IHS, DMH, ZEVACOR and Boards of Directors of IHS and DMH, hereby states the following:

1.    That NAQVI repeats and realleges paragraphs 1-21 of the general allegations of his Complaint as paragraphs 1-21 of Count I of his Complaint.

22.    That NAQVI was hired by IHS, DMH and ZEVACOR on or about November 18, 2013 and remained employed with IHS, DMH and ZEVACOR until November 5, 2015 when NAQVI's employment was terminated by IHS, DMH and ZEVACOR.

23.    NAQVI is of South Asian descent and is non-white.

24.    On information and belief, NAQVI was the first non-white executive hired in the 100 year history of DMH.

25.    That during the course of NAQVI's employment with IHS, DMH and ZEVACOR, NAQVI was exposed to a work place environment that was tainted by overtly discriminatory animus and hostilities toward non-white employees and other

minority employees, including but not limited to non-white employees and female employees.

26.     During his tenure at IHS, DMH and ZEVACOR, NAQVI learned that senior executives of IHS, DMH and ZEVACOR were engaging in the granting of promotions on the basis of the exchange of sexual favors. Additionally, NAQVI observed instances when non-white employees and female employees of IHS and DMH were disciplined and or terminated for certain conduct and or actions when white employees and male employees of IHS and DMH who committed similar actions and or conduct were not disciplined or terminated.

27.     NAQVI opposed the hostile treatment of minority employees and reported the discriminatory actions of senior executive personnel of IHS, DMH and ZEVACOR to senior management personnel of IHS and DMH; but there remained an undercurrent of discriminatory animus toward NAQVI and other minority employees.

28.     NAQVI and other minority employees were ridiculed and intimidated because of their minority characteristics. NAQVI, in particular, was ridiculed because of his status as a non-white executive of IHS, DMH and ZEVACOR.

29.     During the course of his employment with IHS, DMH and ZEVACOR, NAQVI opposed the discriminatory acts of his superiors and colleagues, including but not limited to the acts of SMITHMIER and STONE and other key executive personnel, including acts prohibiting or discouraging NAQVI from attending business luncheons and or business meetings with i) business leaders in the Decatur area community; and ii) key leaders of IHS and DMH.

30.     NAQVI was also treated differently than other white executives of

6

IHS and DMH. For example, NAQVI's employment contract was held by SMITHMIER while the employment contract of a white senior executive of DMH was returned to the executive in a timely unobstructed fashion notwithstanding that NAQVI and the other senior executive were otherwise similarly situated in all material respects. Additionally, NAQVI worked on various projects with other white senior management personnel who were awarded bonuses and other compensation, including but not limited to the granting of equity interest(s) in ZEVACOR for work performed; and NAQVI was not given similar compensation or consideration for similar work performed.

31.    That on November 5, 2015 NAQVI's employment with IHS, DMH and ZEVACOR was terminated as a consequence of NAQVI's opposition to the discriminatory actions of senior executives and the Boards of Directors of IHS, DMH and ZEVACOR.

32.    That at the time of NAQVI's termination he was meeting the legitimate business expectations of IHS, DMH and ZEVACOR.

33.    Notwithstanding the fact that NAQVI was meeting the legitimate business expectations of IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH, NAQVI's employment with IHS, DMH and ZEVACOR was terminated in violation of the provisions of 42 USC §§2000e 2-3 et. seq., which provisions prohibit employers from: i) discriminating against employees on the basis of protected characteristics, including race and ethnicity; ii) exposing employees to a hostile work environment; and treating employees in a disparate fashion on the basis of protected characteristics, including but not limited to race and ethnicity. In particular, NAQVI was terminated due

to his opposition to violations by IHS, DMH and ZEVACOR of the applicable provisions of 42 USC §§2000e 2-3 et. seq.

34.     NAQVI has complied with all administrative prerequisites by timely filing Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants, IHS, DMH and ZEVACOR; and NAQVI has received right to sue letters from the EEOC in each of the administrative filings, copies of which are attached hereto and incorporated herein by reference as Exhibits "A", "B" and "C" respectively.

35.     This Complaint is being brought within ninety (90) days of NAQVI's counsel's receipt of the right to sue letters, which were received by counsel for NAQVI on April 7, 2017.

36.     As a result of the discriminatory acts of IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH, asserted in this Count I, NAQVI has sustained damages, including but not limited to the following:

a.      Compensation for back pay and other employer sponsored benefits owed to NAQVI as a result of the foregoing acts of IHS, DMH, ZEVACOR, the Boards of Directors of IHS and DMH and its subsidiaries;

b.      Compensation for front pay and other employer sponsored benefits lost by NAQVI as a consequence of the foregoing acts of IHS, DMH, ZEVACOR, the Boards of Directors of IHS and DMH and its subsidiaries;

c.      Punitive damages for the actions of IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH to act as a deterrent to employers, including IHS,

8

DMH, ZEVACOR and Boards of Directors of IHS and DMH to violate the provisions of Title VII of the Civil Rights Act of 1964;

d.       Attorney's fees incurred by NAQVI in the pursuit of all actions alleged and asserted against IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH;

e.       All other compensatory damages available under the federal and state laws applicable to the matters set forth herein;

f.       Such other relief as this Court deems equitable and proper.

## COUNT II

## ILLINOIS WHISTLEBLOWER PROTECTION ACT RETALIATION

NOW COMES Plaintiff, ALI NAQVI, and for Count II of his Complaint alleged against Defendants, IHS, DMH, ZEVACOR and Boards of Directors of IHS and DMH, f//k/a DMH SYSTEMS, hereby states the following:

1.       That NAQVI repeats and realleges paragraphs 1-21 of the general allegations of his Complaint as paragraphs 1-21 of Count II of his Complaint.

22.       At all times relevant to the matters set forth in this Complaint there was in effect in the State of Illinois a certain statute known as the Illinois Whistleblower Protection Act (740 ILCS 174/1  et seq.)

23.       At all times relevant to the matters set forth in this Complaint, the provisions of 740 ILCS 174/15 provided in pertinent part the following:

(a) An employer may not retaliate against an employee who discloses information in a court, an administrative hearing, or before a legislative commission or committee, or in any other proceeding, where the employee has reasonable cause

9

to believe that the information discloses a violation of a State or federal law, rule, or regulation.

(b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation.

Section 20 of the Act also provided in pertinent part that:

Retaliation for certain refusals prohibited. An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation, including, but not limited to, violations of the Freedom of Information Act.

Section 20.1 further provided:

Any other act or omission not otherwise specifically set forth in this Act, whether within or without the workplace, also constitutes retaliation by an employer under this Act if the act or omission would be materially adverse to a reasonable employee and is because of the employee disclosing or attempting to disclose public corruption or wrongdoing.

24.     That on or about November 18, 2013, and continuing thereafter until November 5, 2015, NAQVI was the Executive Vice President and Chief Financial Officer of IHS, DMH, and ZEVACOR.

25.     That during NAQVI's employment with IHS, DMH and ZEVACOR, NAQVI performed all of the duties of the Executive Vice President and Chief Financial Officer of IHS, DMH and ZEVACOR.

26.     That as Executive Vice President and Chief Financial Officer of IHS, DMH and ZEVACOR, NAQVI's job duties included, but were not limited to the following:

a.      Providing for the financial well-being of IHS and DMH by providing financial projections and accounting services for IHS and DMH and their subsidiaries;

b.      Preparing reports, projections and documents regarding the finance organizational strategies of IHS and DMH by contributing financial and accounting information, analysis, and recommendations;

c.      Drafted and developed organization prospects by studying economic trends and revenue opportunities; projecting acquisition and expansion prospects; analyzing organization operations and other related evaluations;

d.      Oversaw the management and coordination of all fiscal reporting activities for IHS and DMH;

e.      Attended Boards of Directors meetings, audit committee meetings, subcommittee meetings and performed all tasks necessary to apprise the directors of the financial and accounting information, analysis and recommendations to the Boards;

f.      Otherwise performed duties as assigned by the President and CEO of IHS, DMH and ZEVACOR; and

g.      Otherwise performed all duties necessary to meet the reasonable requests of directors of the Boards of Directors of IHS and DMH.

29.     That at all times relevant to the matters set forth in this Complaint there was in effect in the State of Illinois the Uniform Prudent Management of Institutional Funds Act ("UPMIFA"), which provided in pertinent part at 760 ILCS 51/3 the following:

Sec. 3

(a)  Subject to the intent of a donor expressed in a gift instrument, an institution, in managing and investing an institutional fund, shall consider the charitable purposes of the institution and the purposes of the institutional fund.

(b)  In addition to complying with the duty of loyalty imposed by law other than this Act, each person responsible for managing and investing an institutional fund

shall manage and invest the fund in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

(c)  In managing and investing an institutional fund, an institution:

(1)  may incur only costs that are appropriate and reasonable in relation to the assets, the purposes of the institution, and the skills available to the institution; and

(2)  shall make a reasonable effort to verify facts relevant to the management and investment of the fund.

(d)  An institution may pool two or more institutional funds for purposes of management and investment.

(e)  Except as otherwise provided by a gift instrument, the following rules apply:

(1)  In managing and investing an institutional fund, the following factors, if relevant, must be considered:

(A)  general economic conditions;

(B)  the possible effect of inflation or deflation;

(C)  the expected tax consequences, if any, of investment decisions or strategies;

(D)  the role that each investment or course of action plays within the overall investment portfolio of the fund;

(E)  the expected total return from income and the appreciation of investments;

(F)  other resources of the institution;

(G)  the needs of the institution and the fund to make distributions and to preserve capital; and

(H)  an asset's special relationship or special value, if any, to the charitable purposes of the institution.

(2)  Management and investment decisions about an individual asset must be made not in isolation but rather in the context of the institutional fund's portfolio of investments as a whole and as a part of an overall investment

12

strategy having risk and return objectives reasonably suited to the fund and to the institution.

(3) Except as otherwise provided by law other than this Act, an institution may invest in any kind of property or type of investment consistent with this Section.

(4) An institution shall diversify the investments of an institutional fund unless the institution reasonably determines that, because of special circumstances, the purposes of the fund are better served without diversification.

(5) Within a reasonable time after receiving property, an institution shall make and carry out decisions concerning the retention or disposition of the property or to rebalance a portfolio, in order to bring the institutional fund into compliance with the purposes, terms, and distribution requirements of the institution as necessary to meet other circumstances of the institution and the requirements of this Act.

(6) A person that has special skills or expertise, or is selected in reliance upon the person's representation that the person has special skills or expertise, has a duty to use those skills or that expertise in managing and investing institutional funds.

30.     That IHS and DMH and the Boards of Directors of IHS and DMH were obligated to comply with the provisions of the UPMIFA in the investment of applicable funds.

31.     That IHS, DMH and the Boards of Directors of IHS and DMH violated the applicable provisions of UPMIFA in one or more or all of the following ways:

a.     Failed to act as reasonably prudent investors would act in the investment of funds of IHS and DMH in various projects, including but not limited to investing in ZEVACOR, a subsidiary of IHS, which subsidiary functioned as a holding company for various "for-profit" assets of IHS;

b.     Knowingly relied upon "manufactured" reports that the directors knew or with the exercise of reasonable care should have known were untrue;

c.      Approved the investment of institutional funds in high risk investment ventures despite the fact that the Boards of Directors knew or with the exercise of reasonable care should have known that the financial reporting, analysis and communications submitted to the Boards of Directors for their consideration were fabricated and manipulated by the Chief Executive Officer of IHS, DMH and ZEVACOR;

d.      Ignored the reports of NAQVI with respect to the high risk of investing in various projects, including investing in ZEVACOR;

e.      Promoted and approved the use of institutional funds for investment notwithstanding the financial forecasts and other information provided to the senior executives and Boards of Directors of IHS and DMH by persons other than NAQVI;

f.      Refused to give consideration to the reports of NAQVI made by NAQVI to directors on the Boards of Directors of IHS and DMH and to senior executive personnel that the financial information relied on by IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH was not reliable, and in fact had been fraudulently changed by the CEO of IHS and DMH;

g.      Refused to fully investigate the allegations made by NAQVI to various directors of the Boards of Directors of IHS and DMH regarding and relating to the information evidencing the high risk nature of investing in certain projects by IHS and DMH, including but not limited to ZEVACOR, notwithstanding NAQVI's presentation of evidence of the fraud and deception committed by senior executives and service providers of IHS and DMH;

h.      Ordered NAQVI to refrain from reporting his suspicions regarding the fraudulent and deceptive practices of senior executives of IHS and DMH to the regulatory agencies, including but not limited to the Department of Justice, notwithstanding NAQVI's direct reporting of his concerns to directors, including but not limited to ROBIN KING;

i.      Failed to launch independent investigation of the allegations made by NAQVI to senior executives of IHS, DMH and the directors of the Boards of Directors of IHS and DMH;

j.      Commencement of a sham investigation by related affiliates of senior executives of IHS, DMH and the directors of the Boards of Directors of IHS and DMH to look into the concerns raised by NAQVI to senior executives of IHS, DMH and directors of the Boards of Directors of IHS and DMH with the specific intent of using the sham investigation to impugn the credibility of NAQVI and avoid any investigation of the illicit and illegal acts and omissions of senior executive personnel of IHS, DMH and directors of Boards of Directors of IHS and DMH;

k.      Otherwise violated obligations owed by IHS, DMH and ZEVACOR senior executive personnel and directors of the Boards of Directors of IHS and DMH to make investment decisions in accordance with the regulations set forth in UPMIFA; and

l.      And otherwise committed illicit and allegedly illegal actions prohibited by the Constitution and the statutes and case law of the State of Illinois, including but not limited to terminating NAQVI's employment for his refusal to commit allegedly illegal actions, and for NAQVI's complaints made to other senior management personnel regarding his suspicions of alleged illegal actions being committed by other senior executive personnel of IHS and DMH.

32.     As NAQVI discovered the irregularities, illegal investments, and the impact such activities were having on DMH's ability to stay functional, NAQVI documented, analyzed, and reported his concerns to: i) the CEO of IHS, DMH and ZEVACOR; ii) the legal counsel of IHS, DMH and ZEVACOR; iii) the head of the audit committee for IHS and DMH; iv) the Chairpersons of the Boards of Directors of IHS and DMH, the directors of the Boards of Directors of IHS and DMH; v) the auditors for IHS and DMH; and vi) the advisors to IHS and DMH.

33.    NAQVI refused to participate in or otherwise overlook the irregularities and the illicit and illegal investments of IHS and DMH.

34.    As a consequence of NAQVI's refusal to participate in or otherwise overlook the actions of the executive personnel of IHS, DMH and the Boards of Directors of IHS and DMH, and due to NAQVI's affirmative reporting of the foregoing illicit, fraudulent and reckless acts and omissions of senior executives of IHS and DMH to the directors of the Boards of Directors of IHS and DMH, NAQVI was placed on administrative leave effective on or about September 30, 2015.

35.    Furthermore, as a consequence of NAQVI's participation in the sham investigation launched by IHS, DMH and the Boards of Directors of IHS and DMH, NAQVI was placed on administrative leave effective on or about September 30, 2015.

36.    Thereafter, as a consequence of NAQVI's refusal to participate in the actions complained of, the reports of NAQVI and NAQVI's participation in the sham investigation launched by IHS, DMH and the Boards of Directors of IHS and DMH, NAQVI's employment with IHS, DMH and ZEVACOR was terminated on November 5, 2015.

37.    That IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH terminated NAQVI for his report of the illicit, fraudulent and reckless actions of senior executives of IHS, DMH and ZEVACOR and the directors of the Boards of Directors of IHS and DMH; and further terminated NAQVI for his participation in the sham investigation launched by IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH.

38.    The actions of IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH, violated the provisions of 740 ILCS 174/1, and more specifically, the applicable provisions of Section 15, 20 and 20.1, by retaliating against NAQVI as a result of NAQVI's disclosure to the CEO of IHS, DMH and ZEVACOR of various violations by IHS, DMH and ZEVACOR that NAQVI believed violated laws of the state, including but not limited to violating the provisions of the UPMIFA.

39.    As a result of the foregoing acts and omissions of IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH, asserted in this Count II, NAQVI has sustained damages, including but not limited to the following:

a.    Compensation for back pay and other employer sponsored benefits owed to NAQVI as a result of the foregoing acts and omissions of IHS, DMH, ZEVACOR, the Boards of Directors of IHS and DMH and its subsidiaries;

b.    Compensation for front pay and other employer sponsored benefits lost by NAQVI as a consequence of the foregoing acts and omissions of IHS, DMH, ZEVACOR, the Boards of Directors of HIS and DMH and its subsidiaries;

c.    Punitive damages for the acts of IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH to act as a deterrent to employers, including IHS, DMH, ZEVACOR and Boards of Directors of IHS and DMH to violate the provisions of the Illinois Whistleblower Protection Act;

d.    Attorney's fees incurred by NAQVI in the pursuit of all actions alleged and asserted against IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH;

e.      All other compensatory damages available under the federal and state laws applicable to the matters set forth herein;

f.      Such other relief as this Court deems equitable and proper.

## COUNT III

## RETALIATORY DISCHARGE COMMON LAW ACTION

NOW COMES Plaintiff, ALI NAQVI, and for Count III of his Complaint alleged against Defendants, IHS, DMH, ZEVACOR and Boards of Directors of IHS, f/n/k DMH SYSTEMS, which Count III is alleged *in the alternative* to Count II of his Complaint, and for his Count III hereby states the following:

1.      That NAQVI repeats and realleges paragraphs 1-21 of the general allegations of his Complaint as paragraphs 1-21 of Count III of his Complaint.

22.      That on or about November 18, 2013 and continuing thereafter until November 5, 2015, NAQVI was the Executive Vice President and Chief Financial Officer of IHS, DMH, and ZEVACOR.

23.      That during NAQVI's employment with IHS, DMH and ZEVACOR, NAQVI performed all of the duties of the Executive Vice President and Chief Financial Officer of IHS, DMH and ZEVACOR.

24.      That as Executive Vice President and Chief Financial Officer of IHS, DMH and ZEVACOR, NAQVI's job duties included, but were not limited to the following:

a.      Providing for the financial well-being of IHS and DMH by providing financial projections and accounting services for IHS and DMH and their subsidiaries;

18

b.        Preparing reports, projections and documents regarding the finance organizational strategies of IHS and DMH by contributing financial and accounting information, analysis, and recommendations;

c.        Drafted and developed organization prospects by studying economic trends and revenue opportunities; projecting acquisition and expansion prospects; analyzing organization operations and other related evaluations;

d.        Oversaw the management and coordination of all fiscal reporting activities for IHS and DMH;

e.        Attended Boards of Directors meetings, audit committee meetings, subcommittee meetings and performed all tasks necessary to apprise the directors of the financial and accounting information, analysis and recommendations to the Boards;

f.        Otherwise performed duties as assigned by the President and CEO of IHS, DMH and ZEVACOR; and

g.        Otherwise performed all duties necessary to meet the reasonable requests of directors of the Boards of Directors of IHS and DMH.

25.        That at all times relevant to the matters set forth in this Complaint there was in effect in the State of Illinois the Uniform Prudent Management of Institutional Funds Act ("UPMIFA"), which provided in pertinent part at 760 ILCS 51/3 the following:

Sec. 3

(a)  Subject to the intent of a donor expressed in a gift instrument, an institution, in managing and investing an institutional fund, shall consider the charitable purposes of the institution and the purposes of the institutional fund.

(b)  In addition to complying with the duty of loyalty imposed by law other than this Act, each person responsible for managing and investing an institutional fund shall manage and invest the fund in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

(c)  In managing and investing an institutional fund, an institution:

(1)  may incur only costs that are appropriate and reasonable in relation to the assets, the purposes of the institution, and the skills available to the institution; and

(2)  shall make a reasonable effort to verify facts relevant to the management and investment of the fund.

(d)  An institution may pool two or more institutional funds for purposes of management and investment.

(e)  Except as otherwise provided by a gift instrument, the following rules apply:

(1)  In managing and investing an institutional fund, the following factors, if relevant, must be considered:

(A)  general economic conditions;

(B)  the possible effect of inflation or deflation;

(C)  the expected tax consequences, if any, of investment decisions or strategies;

(D)  the role that each investment or course of action plays within the overall investment portfolio of the fund;

(E)  the expected total return from income and the appreciation of investments;

(F)  other resources of the institution;

(G)  the needs of the institution and the fund to make distributions and to preserve capital; and

(H)  an asset's special relationship or special value, if any, to the charitable purposes of the institution.

(2)  Management and investment decisions about an individual asset must be made not in isolation but rather in the context of the institutional fund's portfolio of investments as a whole and as a part of an overall investment strategy having risk and return objectives reasonably suited to the fund and to the institution.

(3)  Except as otherwise provided by law other than this Act, an institution may invest in any kind of property or type of investment consistent with this Section.

(4)  An institution shall diversify the investments of an institutional fund unless the institution reasonably determines that, because of special

circumstances, the purposes of the fund are better served without diversification.

(5)  Within a reasonable time after receiving property, an institution shall make and carry out decisions concerning the retention or disposition of the property or to rebalance a portfolio, in order to bring the institutional fund into compliance with the purposes, terms, and distribution requirements of the institution as necessary to meet other circumstances of the institution and the requirements of this Act.

(6)  A person that has special skills or expertise, or is selected in reliance upon the person's representation that the person has special skills or expertise, has a duty to use those skills or that expertise in managing and investing institutional funds.

26.     That IHS and DMH and the Boards of Directors of IHS and DMH were obligated to comply with the provisions of the UPMIFA in the investment of applicable funds.

27.     That IHS, DMH and the Boards of Directors of IHS and DMH violated the applicable provisions of UPMIFA in one or more or all of the following ways:

a.      Failed to act as reasonably prudent investors would act in the investment of funds of IHS and DMH in various projects, including but not limited to investing in ZEVACOR, a subsidiary of IHS, which subsidiary functioned as a holding company for various "for-profit" assets of IHS;

b.      Knowingly relied upon "manufactured" reports that the directors knew or with the exercise of reasonable care should have known were untrue;

c.      Approved the investment of institutional funds in high risk investment ventures despite the fact that the Boards of Directors knew or with the exercise of reasonable care should have known that the financial reporting, analysis and communications submitted to the Boards of Directors for their consideration were fabricated and manipulated by the Chief Executive Officer of IHS, DMH and

21

ZEVACOR;

d.      Ignored the reports of NAQVI with respect to the high risk of investing in various projects, including ZEVACOR;

e.      Promoted and approved the use of institutional funds for investment notwithstanding the financial forecasts and other information provided to the senior executives and Boards of Directors of IHS and DMH by persons other than NAQVI;

f.      Refused to give consideration to the reports of NAQVI made by NAQVI to directors on the Boards of Directors of IHS and DMH and to senior executive personnel that the financial information relied on by IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH was not reliable, and in fact had been fraudulently changed by the CEO of IHS and DMH;

g.      Refused to fully investigate the allegations made by NAQVI to various directors of the Boards of Directors of IHS and DMH regarding and relating to the information evidencing the high risk nature of investing in certain projects by IHS and DMH, including but not limited to investing in ZEVACOR, notwithstanding NAQVI's presentation of evidence of the fraud and deception committed by senior executives of IHS and DMH;

h.      Ordered NAQVI to refrain from reporting his suspicions regarding the fraudulent and deceptive practices of senior executives of IHS and DMH to the regulatory agencies, including but not limited to the Department of Justice, notwithstanding NAQVI's direct reporting of his concerns to directors, including but not limited to ROBIN KING;

22

i.      Failed to launch independent investigation of the allegations made by NAQVI to senior executives of IHS, DMH and the directors of the Boards of Directors of IHS and DMH;

j.      Commencement of a sham investigation by related affiliates of senior executives of IHS, DMH and the directors of the Boards of Directors of IHS and DMH to look into the concerns raised by NAQVI to senior executives of IHS, DMH and directors of the Boards of Directors of IHS and DMH with the specific intent of using the sham investigation to impugn the credibility of NAQVI and avoid any investigation of the illicit acts and omissions of senior executive personnel of IHS, DMH and directors of Boards of Directors of IHS and DMH;

k.      Otherwise violated obligations owed by IHS, DMH and ZEVACOR senior executive personnel and directors of the Boards of Directors of IHS and DMH to make investment decisions in accordance with the regulations set forth in UPMIFA; and

l.      And otherwise committed illicit and allegedly illegal actions prohibited by the Constitution and the statutes and case law of the State of Illinois, including but not limited to terminating NAQVI's employment for his refusal to commit allegedly illegal actions, and for NAQVI's complaints made to other senior management personnel regarding his suspicions of alleged illegal actions being committed by other senior executive personnel of IHS and DMH.

28.     As NAQVI discovered the irregularities, illegal investments, and the impact such activities were having on DMH's ability to stay functional, NAQVI documented, analyzed, and reported his concerns to: i) the CEO of IHS, DMH and ZEVACOR; ii) the legal counsel of IHS, DMH and ZEVACOR; iii) the head of the audit committee for IHS and DMH; iv) the Chairpersons of the Boards of Directors of IHS and

DMH, the directors of the Boards of Directors of IHS and DMH; v) the auditors for IHS and DMH; and vi) the advisors to IHS and DMH.

29.     As a consequence of NAQVI's reporting of the foregoing illicit, fraudulent and reckless acts and omissions to senior executives of IHS and DMH and the directors of the Boards of Directors of IHS and DMH, NAQVI was placed on administrative leave effective on or about September 30, 2015.

30.     Furthermore, as a consequence of NAQVI's participation in the sham investigation launched by IHS, DMH and the Boards of Directors of IHS and DMH, NAQVI was placed on administrative leave effective on or about September 30, 2015.

31.     Thereafter, as a consequence of the reports of NAQVI and NAQVI's participation in the sham investigation launched by IHS, DMH and the Boards of Directors of IHS and DMH, NAQVI's employment with IHS, DMH and ZEVACOR was terminated on November 5, 2015.

32.     That IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH terminated NAQVI for his report of the illicit, fraudulent and reckless actions of senior executives of IHS, DMH and ZEVACOR and the directors of the Boards of Directors of IHS and DMH; and further terminated NAQVI for his participation in the sham investigation launched by IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH.

33.     That at all times relevant to the matters set forth in this Complaint, it was in the best interests of the members of the general public in the State of Illinois that charitable organizations adhere to their respective obligations to follow the rules and regulations applicable to institutional funds, including but not limited to non-profit

24

corporations like IHS and DMH, and more particularly articulated in the provisions of UPMIFA.

34.     That UPMIFA was enacted and adopted by the Illinois legislature for the purpose of insuring that the institutional funds protected by the provisions of UPMIFA be invested in a reasonable and prudent manner to preserve and protect the general public; and in particular to protect against dilatory loss of charitable funds and contributions made by members of the general public of Illinois to non-profit corporations, including but not limited to IHS and DMH.

35.     That UPMIFA provides guidance and authority to charitable organizations concerning the management and investment of funds held by those organizations, and UPMIFA imposes additional duties on those who manage and invest charitable funds. These duties provide additional protections for charities and also protect the interests of donors and members of the general public who have an interest in making sure that contributions to charitable organizations are used wisely.

36.     That the actions and omissions of IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH, in violating the provisions of UPMIFA; and thereafter terminating the employment of NAQVI for his reports of the violations of a public policy enacted and adopted for the protection of all citizens of Illinois violates the common law protections afforded to NAQVI to be free from retaliation for his refusal to particpate in and or allow violations of UPMIFA by IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH.

37.     That NAQVI's employment with IHS, DMH and ZEVACOR was terminated in retaliation for his refusal to participate in, cover up, ignore or otherwise

25

forego the reporting of the violations of IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH of the laws and public policies of the State of Illinois in contravention of the common law protections afforded to NAQVI to be free from retaliation for such actions of NAQVI in resisting and reporting the actions of IHS, DMH, ZEVACOR and Boards of Directors of IHS and DMH as alleged herein.

38.    As a result of the foregoing acts and omissions of IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH, asserted in this Count II, NAQVI has sustained damages, including but not limited to the following:

a.    Compensation for back pay and other employer sponsored benefits owed to NAQVI as a result of the foregoing acts and omissions of IHS, DMH, ZEVACOR, the Boards of Directors of IHS and DMH and its subsidiaries;

b.    Compensation for front pay and other employer sponsored benefits lost by NAQVI as a consequence of the foregoing acts and omissions of IHS, DMH, ZEVACOR, the Boards of Directors of HIS and DMH and its subsidiaries;

c.    Punitive damages for the acts of IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH to act as a deterrent to employers, including IHS, DMH, ZEVACOR and Boards of Directors of IHS and DMH to violate the laws of the State of Illinois prohibiting retaliation;

d.    Attorney's fees incurred by NAQVI in the pursuit of all actions alleged and asserted against IHS, DMH, ZEVACOR and the Boards of Directors of IHS and DMH;

e.    All other compensatory damages available under the federal and state laws applicable to the matters set forth herein;

f.      Such other relief as this Court deems equitable and proper.

## COUNT IV

## DEFAMATION PER SE

NOW COMES Plaintiff, ALI NAQVI, and for Count IV of his Complaint alleged against Defendants, IHS, DMH, ZEVACOR and Boards of Directors of IHS, f/n/k DMH SYSTEMS, TIMOTHY D. STONE, JR., ROY MOSSER, RON DRANE, ROBIN KING, JOHN FUNK, SCOTT FREDERICKSEN, and KEN SMITHMIER, individually and in their respective capacity as directors and ex-officio members of the Boards of Directors of IHS and DMH (collectively referred to hereafter as "Defendants") and which Count IV of his Complaint, hereby states the following:

1.      That NAQVI repeats and realleges paragraphs 1-21 of the general allegations of his Complaint as paragraphs 1-21 of Count IV of his Complaint.

22.     That on or about November 7, 2016, which was within one (1) year of the acts complained of in this Count IV, NAQVI filed a civil defamation action in the Circuit Court of Macon County against the Defendants, which action was filed in Macon County Cause No. 2016 L 122 (hereafter "the Case").

23.     That the Case was voluntarily non-suited without prejudice by NAQVI in accordance with the applicable provisions of 735 ILCS 5/2-1009 on December 2, 2016.

24.     That this action for defamation is being filed prior to the expiration of the one year period provided for in the provisions of the Illinois Code of Civil Procedure for reinstatement of an action that has been voluntarily non-suited without prejudice by the plaintiff as provided for in 735 ILCS 5/13-217.

25. That subsequent to the termination of NAQVI's employment with IHS, DMH, and ZEVACOR, Defendants published false statements about NAQVI to other persons, including but not limited to NAQVI's former clients and partners, and other persons who were prominent in the banking industry and nuclear medicine industry and related enterprise industries in and around Central Illinois and additionally, in the State of Virginia and Washington D.C.

26. That subsequent to the termination of NAQVI's employment with IHS, DMH and ZEVACOR, Defendants, including officers and agents of each of the corporate defendants, together with each of the individual defendants named herein, made the following false, derogatory and defamatory statements about NAQVI to others:

a. That NAQVI accepted money and other valuable consideration as a "bribe" during the course of negotiations for the procurement of ROSE HOLDINGS SARL by C-Molecular, a subsidiary of IHS, which asserted actions and conduct would be considered a criminal offense, and a violation of business ethics, and which assertions were false and derogatory and defamatory and demeaned NAQVI's business reputation and reputation as a good and law abiding citizen and a competent business associate;

b. That NAQVI had taken property of value in exchange for handling various portions of various business transactions, which property of value was allegedly secured and sequestered away in a foreign bank account of NAQVI, which asserted actions and conduct would be considered a criminal offense, and a violation of business ethics, and which assertions were false and derogatory and defamatory and demeaned NAQVI's business reputation and reputation as a good and law abiding citizen and competent business associate;

28

c.      That NAQVI accepted money and other valuable consideration as a second "bribe" during the course of negotiations regarding and relating to the Stock and Asset Purchase Agreement, which asserted actions and conduct would be considered a criminal offense, and a violation of business ethics, and which assertions were false and derogatory and defamatory and demeaned NAQVI's business reputation and reputation as a good and law abiding citizen and a good and competent business associate; and

d.      That NAQVI falsified his employment records and his educational institution records, including but not limited to assertions that NAQVI did not have a MBA in Accounting and affirmatively spread assertions that NAQVI had only taken two accounting courses during his educational endeavors, which statements were false, derogatory and demeaning and impeded NAQVI's business reputation all to his detriment.

27.      That subsequent to the termination of NAQVI's employment with Defendants, various Defendants, including officers and agents of each of the corporate defendants, together with each of the individual defendants named herein, made the foregoing false, derogatory and defamatory statements about NAQVI to others with the specific intent of defaming NAQVI and his family, and diminishing NAQVI's business reputation and his reputation as a law abiding citizen, when the Defendants knew that the statements that Defendants were publishing about NAQVI were false and defamatory and injurious to NAQVI.

28.      That Defendants made the statements set forth in paragraphs 26 and 27 of this Count IV  with malice and with the specific intent of injuring NAQVI, which

29

statements and others led to damages incurred by NAQVI, including but not limited to damages to his professional reputation.

29.    That as a direct and proximate result of the acts complained of against Defendants, NAQVI has been damaged and will continue to be damaged by the publication of false statements about NAQVI to others, which statements by Defendants are untrue and false.

30.    As a result of the foregoing acts and omissions of Defendants asserted in this Count IV, NAQVI has sustained damages, including but not limited to the following:

a.    All compensatory damages available under the federal and state laws applicable to the matters set forth herein;

b.    Such other relief as this Court deems equitable and proper.

## COUNT V

## BREACH OF CONTRACT

NOW COMES Plaintiff, ALI NAQVI, and for Count V of his Complaint alleged against Defendants, IHS and DMH, which Count V is alleged *in the alternative* to Count II and Count III of his Complaint, and for his Count V hereby states the following:

1.    That NAQVI repeats and realleges paragraphs 1-21 of the general allegations of his Complaint as paragraphs 1-21 of Count V of his Complaint.

22.    That in and around October 2014, DMH and NAQVI negotiated terms of an employment agreement. Thereafter, DMH drafted and tendered a written employment agreement to NAQVI setting forth the material terms of the negotiated agreement between DMH, HIS and NAQVI regarding and relating to NAQVI's employment as the Executive Vice-President and System Chief Financial Officer of IHS and DMH.

23.    NAQVI accepted the terms tendered by DMH and NAQVI executed the final draft of the Employment Agreement drafted and tendered by DMH to NAQVI.

24.    Thereafter, NAQVI directed the original of the Employment Agreement signed by NAQVI to KEN SMITHMIER, CEO of DMH and IHS for execution of the same by DMH. KEN SMITHMIER advised NAQVI that he would take care of it.

25.    NAQVI never received a fully executed copy of the Employment Agreement signed by NAQVI despite NAQVI's repeated requests for a copy of the fully executed Employment Agreement.

26.    DMH, IHS and NAQVI all proceeded to take actions consistent with the material terms of the Employment Agreement drafted by DMH and signed by NAQVI in and around October 2014 to November 5, 2015.

27.    NAQVI performed all of his obligations under the provisions of the Employment Agreement negotiated between DMH, IHS and NAQVI; and NAQVI was paid in accordance with the provisions of the Employment Agreement until November 5, 2015 when NAQVI's employment with DMH and IHS was unilaterally terminated by DMH and IHS.

28.    Following the termination of NAQVI's employment by DMH and IHS, DMH and IHS have failed and refused to pay NAQVI in accordance with the provisions of paragraph 10.03 of the Employment Agreement. In particular, DMH and IHS have refused to continue to pay NAQVI his Monthly Salary for the period proscribed in the terms of the written Employment Agreement.

29.    That NAQVI has made demands directed to DMH and IHS for payment of the Monthly Salary provided for in 10.03 of the Employment Agreement. NAQVI has

also made demands on DMH and IHS for a copy of the Employment Agreement signed by NAQVI; but as of this date, DMH and IHS have refused NAQVI's demands.

30.    That NAQVI has a copy of the redline version of the Employment Agreement which sets forth the material terms agreed to between NAQVI and DMH and IHS in October of 2014. A copy of the Employment Agreement is attached hereto as Exhibit "D" and made a part hereof.

31.    Pursuant to the provisions of the Employment Agreement, DMH and IHS owed NAQVI continued payment of his Monthly Salary at the rate in effect at the time of his termination on November 5, 2015 from November 5, 2015 to December 31, 2017 as provided in paragraph 10.03 of the Employment Agreement.

32.    NAQVI's demand for the continued payment of Monthly Salary has been refused.

33.    That DMH and IHS are contractually bound to adhere to the terms of 10.03 of the Employment Agreement and their refusal to pay NAQVI the compensation he is entitled to under the terms of the Employment Agreement is a breach of the terms of the Employment Agreement.

34.    As a consequence of the breach of the terms of the Employment Agreement by DMH and IHS, NAQVI has been damaged in an amount equal to his Monthly Salary at the rate in effect on November 5, 2015 for the period from November 5, 2015 to December 31, 2017 as provided in paragraph 10.03 of the Employment Agreement.

35. As a result of the foregoing acts and omissions of DMH and IHS asserted in this Count V, NAQVI has sustained damages, including but not limited to the following:

a. All compensatory damages available under the federal and state laws applicable to the matters set forth herein;

b. Such other relief as this Court deems equitable and proper.

## COUNT VI

## TORTIOUS INTERFERENCE WITH A CURRENT BUSINESS RELATIONSHIP

NOW COMES Plaintiff, ALI NAQVI, and for Count VI of his Complaint alleged against Defendants, TIMOTHY D. STONE, JR., ROY MOSSER, RON DRANE, ROBIN KING, JOHN FUNK, SCOTT FREDERICKSEN, and KEN SMITHMIER, individually and in their respective capacity as directors and ex-officio members of the Boards of Directors of IHS and DMH (collectively referred to hereafter as "Defendants") and which Count VI of his Complaint, hereby states the following:

1. That NAQVI repeats and realleges paragraphs 1-21 of the general allegations of his Complaint as paragraphs 1-21 of Count VI of his Complaint.

22. That in and around October 2014, DMH and NAQVI negotiated terms of an employment agreement. Thereafter, DMH drafted and tendered a written employment agreement to NAQVI setting forth the material terms of the negotiated agreement between DMH, HIS and NAQVI regarding and relating to NAQVI's employment as the Executive Vice-President and System Chief Financial Officer of IHS and DMH.

23. NAQVI accepted the terms tendered by DMH and NAQVI executed the final draft of the Employment Agreement drafted and tendered by DMH to NAQVI.

24.     Thereafter, DMH directed the original of the Employment Agreement signed by NAQVI to KEN SMITHMIER, CEO of DMH and IHS for execution of the same by DMH.

25.     NAQVI never received a fully executed copy of the Employment Agreement signed by NAQVI despite NAQVI's repeated requests for a copy of the fully executed Employment Agreement.

26.     DMH, IHS and NAQVI all proceeded to take actions consistent with the material terms of the Employment Agreement drafted by DMH and signed by NAQVI in and around October 2014 to November 5, 2015.

27.     NAQVI performed all of his obligations in accordance with the provisions of the Employment Agreement negotiated between DMH, IHS and NAQVI; and NAQVI was paid in accordance with the provisions of the Employment Agreement until November 5, 2015 when NAQVI's employment with DMH and IHS was unilaterally terminated by DMH and IHS.

28.      Defendants made the following false, derogatory and defamatory statements about NAQVI to senior executive management personnel of IHS and DMH with the intent of interfering with NAQVI's contractual relationship with IHS and DMH:

a.     That NAQVI accepted money and other valuable consideration as a "bribe" during the course of negotiations for the procurement of ROSE HOLDINGS SARL by C-Molecular, a subsidiary of IHS, which asserted actions and conduct would be considered a criminal offense, and a violation of business ethics, and which assertions were false and derogatory and defamatory and demeaned NAQVI's business reputation and reputation as a good and law abiding citizen and a competent business associate;

b.      That NAQVI had taken property of value in exchange for handling various portions of various business transactions, which property of value was allegedly secured and sequestered away in a foreign bank account of NAQVI, which asserted actions and conduct would be considered a criminal offense, and a violation of business ethics, and which assertions were false and derogatory and defamatory and demeaned NAQVI's business reputation and reputation as a good and law abiding citizen and competent business associate;

c.      That NAQVI accepted money and other valuable consideration as a second "bribe" during the course of negotiations regarding and relating to the Stock and Asset Purchase Agreement, which asserted actions and conduct would be considered a criminal offense, and a violation of business ethics, and which assertions were false and derogatory and defamatory and demeaned NAQVI's business reputation and reputation as a good and law abiding citizen and a good and competent business associate; and

d.      Otherwise made statements and took actions to impugn NAQVI's reputation with his colleagues and senior management personnel at IHS and DMH, which statements were false, derogatory and demeaning and impeded NAQVI's business reputation all to his detriment.

29.     That as a consequence of the foregoing intentional and malicious actions of Defendants, IHS and DMH terminated the Employment Agreement of NAQVI and refused to pay NAQVI compensation that he was entitled to under the terms of the Employment Agreement when the Defendants knew that the statements that Defendants were publishing about NAQVI were false, defamatory, injurious to NAQVI and which

Defendants knew would result in IHS and DMH terminating the Employment Agreement with NAQVI.

30.     That as a direct and proximate result of the acts complained of against Defendants, NAQVI has sustained damages, including but not limited to the following:

a.     All compensatory damages available under the federal and state laws applicable to the matters set forth herein;

b.     Such other relief as this Court deems equitable and proper.


## COUNT VII

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

NOW COMES Plaintiff, ALI NAQVI, and for Count VII of his Complaint alleged against Defendants, TIMOTHY D. STONE, JR., ROY MOSSER, RON DRANE, ROBIN KING, JOHN FUNK, SCOTT FREDERICKSEN, and KEN SMITHMIER, individually and in their respective capacity as directors and ex-officio members of the Boards of Directors of IHS and DMH (collectively referred to hereafter as "Defendants") and which Count VII of his Complaint, hereby states the following:

1.     That NAQVI repeats and realleges paragraphs 1-21 of the general allegations of his Complaint as paragraphs 1-21 of Count VII of his Complaint.

22.     That during all times relevant to the matters set forth in this Complaint, NAQVI's job duties included attending Boards of Directors meetings, audit committee meetings, subcommittee meetings and performed all tasks necessary to apprise the directors of the financial and accounting information, analysis and recommendations to the Boards.

23. That during all times relevant to the matters set forth in this Complaint, NAQVI's job duties included duties as assigned by the President and CEO of IHS, DMH and ZEVACOR.

24. That during all times relevant to the matters set forth in this Complaint, NAQVI's job duties included performing all duties necessary to meet the reasonable requests of directors of the Boards of Directors of IHS and DMH.

25. That at various times preceding November 5, 2015, Defendants owed a duty to NAQVI to refrain from causing him emotional distress by their acts or omissions.

26. That in violation of the duties owed to NAQVI by Defendants' to refrain from causing NAQVI emotional distress, Defendants committed one or more or all of the following negligent acts and omissions:

a. Refused to acknowledge NAQVI's authenticate evidence of wrongdoing by senior management personnel of IHS, DMH and ZEVACOR, and as a result Defendants were complicit in covering up the illicit, illegal and fraudulent actions of the senior executive management personnel of IHS, DMH and ZEVACOR which caused great emotional distress and despair to NAQVI;

b. Refused to fully investigate the allegations made by NAQVI to various directors of the Boards of Directors of IHS and DMH regarding and relating to the information evidencing the high risk nature of investing in certain projects by IHS and DMH, including but not limited to investing in ZEVACOR, notwithstanding NAQVI's presentation of evidence of the fraud and deception committed by senior executives of IHS and DMH;

c.    Ordered NAQVI to refrain from reporting his suspicions regarding the fraudulent and deceptive practices of senior executives of IHS and DMH to the regulatory agencies, including but not limited to the Department of Justice, notwithstanding NAQVI's direct reporting of his concerns to directors, including but not limited to ROBIN KING;

d.    Failed to launch independent investigation of the allegations made by NAQVI to senior executives of IHS, DMH and the directors of the Boards of Directors of IHS and DMH;

e.    Commencement of a sham investigation by related affiliates of senior executives of IHS, DMH and the directors of the Boards of Directors of IHS and DMH to look into the concerns raised by NAQVI to senior executives of IHS, DMH and directors of the Boards of Directors of IHS and DMH with the specific intent of using the sham investigation to impugn the credibility of NAQVI and avoid any investigation of the illicit acts and omissions of senior executive personnel of IHS, DMH and directors of Boards of Directors of IHS and DMH; and

f.    Otherwise acting in a manner inconsistent with Defendants' obligations to adhere to appropriate rules of corporate governance and their obligations owed to NAQVI.

27.    That as a direct and proximate result of the negligent acts and omissions of the Defendants, NAQVI sustained damages, including severe emotional distress and despair.

28.    That as a direct and proximate result of the acts complained of against Defendants, NAQVI has sustained damages, including but not limited to the following:

a.      All compensatory damages available under the federal and state laws applicable to the matters set forth herein;

b.      Such other relief as this Court deems equitable and proper.

## COUNT VIII

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

NOW COMES Plaintiff, ALI NAQVI, and for Count VIII of his Complaint alleged against Defendants, IHS, DMH, ZEVACOR and Boards of Directors of IHS, f/n/k DMH SYSTEMS, TIMOTHY D. STONE, JR., ROY MOSSER, RON DRANE, ROBIN KING, JOHN FUNK, SCOTT FREDERICKSEN, and KEN SMITHMIER, individually and in their respective capacity as directors and ex-officio members of the Boards of Directors of IHS and DMH (collectively referred to hereafter as "Defendants") and which Count VIII is alleged *in the alternative* to Count VII of his Complaint, and for his Count VIII hereby states the following:

1.      That NAQVI repeats and realleges paragraphs 1-21 of the general allegations of his Complaint as paragraphs 1-21 of Count VIII of his Complaint.

22.      That during all times relevant to the matters set forth in this Complaint, NAQVI's job duties included attending Boards of Directors meetings, audit committee meetings, subcommittee meetings and performed all tasks necessary to apprise the directors of the financial and accounting information, analysis and recommendations to the Boards.

23.      That during all times relevant to the matters set forth in this Complaint, NAQVI's job duties included duties as assigned by the President and CEO of IHS, DMH and ZEVACOR.

39

24.     That during all times relevant to the matters set forth in this Complaint, NAQVI's job duties included performing all duties necessary to meet the reasonable requests of directors of the Boards of Directors of IHS and DMH.

25.     That at various times preceding November 5, 2015, Defendants owed a duty to NAQVI to refrain from intentionally and maliciously causing him emotional distress.

26.     That in violation of the duties owed to NAQVI by Defendants' to refrain from causing NAQVI emotional distress, Defendants committed one or more or all of the following intentional and malicious acts and omissions:

a.     Refused to acknowledge NAQVI's authenticate evidence of wrongdoing by senior management personnel of IHS, DMH and ZEVACOR, and as a result Defendants were complicit in covering up the illicit, illegal and fraudulent actions of the senior executive management personnel of IHS, DMH and ZEVACOR which caused great emotional distress and despair to NAQVI;

b.     Refused to fully investigate the allegations made by NAQVI to various directors of the Boards of Directors of IHS and DMH regarding and relating to the information evidencing the high risk nature of investing in certain projects by IHS and DMH, including but not limited to investing in ZEVACOR, notwithstanding NAQVI's presentation of evidence of the fraud and deception committed by senior executives of IHS and DMH;

c.     Ordered NAQVI to refrain from reporting his suspicions regarding the fraudulent and deceptive practices of senior executives of IHS and DMH to the regulatory agencies, including but not limited to the Department of Justice,

notwithstanding NAQVI's direct reporting of his concerns to directors, including but not limited to ROBIN KING;

d.      Failed to launch independent investigation of the allegations made by NAQVI to senior executives of IHS, DMH and the directors of the Boards of Directors of IHS and DMH;

e.      Commencement of a sham investigation by related affiliates of senior executives of IHS, DMH and the directors of the Boards of Directors of IHS and DMH to look into the concerns raised by NAQVI to senior executives of IHS, DMH and directors of the Boards of Directors of IHS and DMH with the specific intent of using the sham investigation to impugn the credibility of NAQVI and avoid any investigation of the illicit acts and omissions of senior executive personnel of IHS, DMH and directors of Boards of Directors of IHS and DMH; and

f.      Otherwise acting in a manner inconsistent with Defendants' obligations to adhere to appropriate rules of corporate governance and their obligations owed to NAQVI.

27.      That as a direct and proximate result of the intentional and malicious acts and omissions of the Defendants, NAQVI sustained damages, including severe emotional distress and despair.

28.      That as a direct and proximate result of the intentional and malicious acts complained of against Defendants, NAQVI has sustained damages, including but not limited to the following:

a.      All compensatory damages available under the federal and state laws applicable to the matters set forth herein;

41

b.    Such other relief as this Court deems equitable and proper.

**<u>PLAINTIFF REQUESTS TRIAL BY JURY</u>**

Respectfully Submitted,

ALI NAQVI, Plaintiff

<u>BY: s/Dawn L. Wall</u>
Dawn L. Wall Bar Number 6196948
Attorney for Plaintiff
Costigan & Wollrab, P.C.
308 E. Washington Street
Bloomington, Illinois 61701
(309) 828-4310 phone
dwall@cwlawoffice.com