IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| ALI NAQVI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 17-cv-3145 |
| | ) |
| ILLINOIS HEALTH and | ) |
| SCIENCE, et al., | ) |
| | ) |
| Defendants. | ) |

## **OPINION**

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Plaintiff Ali Naqvi's Motion to Disqualify Defense Counsel (d/e 36) (Naqvi Motion), and Defendants Illinois Health and Science (IHS); Decatur Memorial Hospital (DMH); Zevacor Molecular; Zevacor Pharma, Inc., n/k/a/ Global Isotopes, LLC; Board of Directors of IHS; Board of Directors of DMH; Timothy D. Stone, Jr.; Roy Mosser, Ron Drane; and Robin King's Motion for Protective Order (d/e 45) (Defense Motion) (collectively Motions). The Court held an evidentiary hearing on the Motions on January 22, 2018. Naqvi appeared in person with his counsel Dawn Wall. Defendants appeared by attorneys Daniel Delaney, Imam Boundaoui. Defendant IHS's General Counsel Katie Anderson appeared as the representative of Defendant IHS. For the

reasons set forth below, the Court DENIES the Naqvi Motion and ALLOWS in part the Defense Motion.

Naqvi asks the court to disqualify the law firm representing Defendants in this case, Drinker Biddle & Reath LLP (Drinker Biddle or the Firm).  Naqvi asserts that he is a former client of Drinker Biddle, and so, the Firm has a conflict of interest and cannot now represent Defendants in this case.  In the alternative, Naqvi argues that he was a prospective client who communicated confidential adverse information to Drinker Biddle, and thus, Drinker Biddle has a conflict of interest because it has confidential information from a prospective client.  Naqvi asks the Court to disqualify Drinker Biddle from representing the Defendants in this case.

Defendants assert that Drinker Biddle never represented Naqvi. Rather, the Defendants assert that Naqvi, the former Executive Vice President and Chief Financial Officer (CFO) of IHS and DMH, communicated with attorneys of Drinker Biddle in his role as CFO. Defendants assert that those communications are subject to IHS and DMH's attorney client privilege.  Defendants assert that Naqvi improperly relayed privileged information from those conversations to his counsel and she improperly disclosed privileged information in filings submitted in support of the Naqvi Motion.  Defendants ask the Court to disqualify

Naqvi's counsel for her improper breach of IHS and DMH's attorney-client privilege and bar Naqvi from using privileged communications in this case.

Naqvi's Amended Complaint (d/e 32) alleges that Defendants discriminated against him and retaliated against him during his employment as CFO of IHS and DMH. The discrimination and retaliation ultimately resulted in the termination of his employment on November 5, 2015.  IHS and DMH are related not-for-profit corporations.  Amended Complaint, ¶¶ 6-7.  IHS is the parent corporation of DMH.  DMH operates Decatur Memorial Hospital in Decatur, Illinois.  See Transcript of January 22, 2018 Hearing (d/e 53) (Transcript), at 99.  Naqvi alleges that Zevacor Pharma, Inc. n/k/a Zevacor and Zevacor Molecular n/k/a Global Isotopes LLC (collectively Zevacor) are subsidiaries of IHS.  Naqvi alleges that he was also the CFO of Zevacor.[1]  He alleges that Zevacor is a holding company for various "for-profit" assets of IHS.  Amended Complaint, Parties ¶¶ 8-9, Count II and 27-28.

Naqvi alleges that he alerted Defendants that IHS and DMH's investment in the for-profit Zevacor enterprises violated the Illinois version of the Uniform Prudent Management of Institutional Funds Act (Institutional

---

[1] Defendants identify the Zevacor entities as Zevacor Molecular and Zevacor Pharma, Inc. n/k/a Global Isotopes, LLC.  See e.g., Defense Motion, at 1.

Funds Act or UPMIFA), 760 ILCS 51/3. Naqvi also alleges that he refused to engage in activities that violated the Institutional Funds Act. Naqvi asserts that Defendants retaliated against him for alerting the Defendants of the illegal conduct and for refusing to participate in the illegal conduct. Naqvi contends that Defendants' retaliation culminated in termination of his employment in violation of the Illinois Whistle Blower Protection Act, 740 ILCS 174/15. <u>Amended Complaint</u>, Count II. Naqvi also asserts a claim for wrongful discharge because of Defendants' alleged retaliation against him for speaking up about the alleged violation of the Institutional Funds Act. <u>Amended Complaint</u>, Count III.[2]

    In late August and early September 2015, Naqvi communicated with Drinker Biddle attorneys Michael Rosenbaum, Quin Frazer, and T.J. Sullivan about the IHS and MDH's compliance with the Institutional Funds Act. Both parties rely on these communications to support each side's respective Motion now before the Court. Naqvi and attorneys Rosenbaum and Frazer submitted conflicting affidavits regarding these communications. <u>Memorandum of Law in Support of Plaintiff's Motion to Disqualify Counsel</u>

---

[2] Naqvi alleges other claims. <u>Amended Complaint</u>, Count I (Racial Discrimination, Disparate Treatment, and Hostile Work Environment), Count IV (Defamation Per Se), Count V (Breach of Contract), Count VI (Tortious Interference with Current Business Relationship), Count VII (Negligent Infliction of Emotional Distress), and Count VIII (Intentional Infliction of Emotional Distress). These claims are not directly related to the issues now before the Court.

(d/e 37), Exhibit 1, Affidavit of Ali Naqvi; Defendants' Memorandum in Opposition to Plaintiff's Motion to Disqualify Defense Counsel (d/e 41), Exhibits 1, Affidavit of Michael D. Rosenbaum, and Exhibit 2, Affidavit of Quin Frazer. The Court set an evidentiary hearing to resolve the conflict in the evidence. See Opinion entered November 30, 2017 (d/e 49). Upon careful review and consideration of the parties' submissions and the evidence presented at the hearing, the Court finds the following facts.

Drinker Biddle, or its predecessor law firm, has represented DMH for more than twenty years on various legal matters. See Transcript, at 99-102, 150. Naqvi, as CFO, approved payment of Drinker Biddle's invoices for services rendered. See Defendant's Exhibit 1, Drinker Biddle invoice to IHS (f/k/a MDH Health Systems) dated June 30 2014, and approved for payment by Naqvi; Transcript, at 48, 105 (Naqvi approved payment of Drinker Biddle legal services in connection with clinical patient billing system called EPIC).

Drinker Biddle attorney Rosenbaum represented DMH and IHS on matters related to employee benefits and executive compensation. In his capacity as attorney for DMH and IHS, Rosenbaum attended the meetings of the Plan Administration Committee (sometimes called the PAC). The Plan Administration Committee worked with and monitored employee

benefit plans for IHS, DMH, and related companies.  Transcript, at 103.  As CFO, Naqvi was a member of The Plan Administration Committee.  Transcript, at 9, 105.  In addition, Naqvi also contacted Rosenbaum for legal advice from time to time on issues related to DMH and IHS employee benefits plans.  Transcript, at 45.

Naqvi alleges in his complaint that he expressed concerns to individuals within MDH and IHS management that the investments in Zevacor violated the Institutional Funds Act.  Naqvi testified that he was concerned about both corporate liability and his personal liability under the Institutional Funds Act.  Naqvi testified that he began seeking personal representation to protect himself from personal liability.

On July 21, 2015, Naqvi sent an email to an attorney named Neville M. Bilimoria of the law firm of Duane Morris LLP.  Plaintiff's Exhibit 5, Email thread between Naqvi and Bilimoria dated July 21-22, 2015 (Bilimoria Email Thread).[3]  Bilimoria previously represented another IHS corporate committee called the Special Committee.  The Special Committee was conducting a special investigation of Naqvi's reports of improper conduct within MDH and IHS, including violations of the Institutional Funds Act.

---

[3] Plaintiff's Exhibit 5 was sealed at the evidentiary hearing.  The email indicates that Naqvi had been previously told that Bilimoria could not represent Naqvi.  The Court finds no privileged communication in the email thread and unseals Exhibit 5.

Transcript, at 10; see Amended Complaint, Count I ¶ 27, and Count II ¶ 29. Naqvi testified that MDH and IHS designated him as a "whistleblower" because he reported this information. Transcript, at 19. Naqvi testified that he decided to ask Bilimoria to review his employment contract. Naqvi asked Bilimoria because he knew him from his representation of the Special Committee, and because Duane Morris was no longer involved in the special investigation. Transcript, at 13-14, 86.

Naqvi sent the email to Bilimoria on Naqvi's personal email account al.naqvi@gmail.com. Naqvi stated the following in the email:

> Neville- If I ask you the following question: would you be able to represent me if I need help in reviewing my employment contract or ensuring I am protected – are you obligated to inform your client (Special Committee of IHS) that this questions was asked by me? Will appreciate your answer. Thank you. Al

Bilimoria Email Thread. Bilimoria responded the next day:

> Dear Al,
> As I mentioned to you on the phone when we first spoke, and in my email below of July 10, 2015, I do not and cannot represent you because I represent the Special Committee. That being said, I cannot answer hypothetical questions such as the one you provide below.

Bilimoria Email Thread.

Naqvi testified that he continued his search for a lawyer. He testified that he decided to ask attorney Rosenbaum because Rosenbaum had

made a presentation to the Plan Administration Committee about fiduciary liability. Transcript, at 17-18; see Transcript, at 131. On or about August 28, 2015, Naqvi talked to Rosenbaum.[4] Naqvi testified that he asked Rosenbaum about representing him personally regarding his potential liability for violations of the Institutional Funds Act. Transcript, at 18-19, 25, 29. Rosenbaum disputes this. Rosenbaum testified that Naqvi asked him about the applicability of the Institutional Funds Act to IHS's investments. Rosenbaum testified that Naqvi did not say anything about personal representation. Rosenbaum testified that he was not familiar with the Institutional Funds Act, but other lawyers with Drinker Biddle could address his concerns. Transcript, at 108-12.

On August 31, 2015, Rosenbaum sent an email to Naqvi. In the email, Rosenbaum sought to schedule a meeting with the other lawyers in Drinker Biddle who were familiar with the Institutional Funds Act. Rosenbaum also asked for more detailed information about Naqvi's inquiry. Naqvi responded by email the same day. Naqvi wrote the email on the company email account. He listed questions that "we have." The written questions asked about the applicability of the Institutional Funds Act to

---

[4] Naqvi said he spoke to Rosenbaum personally after a Plan Administration Committee meeting. Rosenbaum said Naqvi called him on the phone. Transcript, at 17-19, 108.

certain investments by IHS and MDH. Defendant's Exhibit Sealed Document 1, Email Thread between Naqvi and Rosenbaum on August 31, 2015 (d/e 43 filed under seal).

On or about September 1, 2015, Naqvi participated in a telephone conference with Rosenbaum, Frazer, and Sullivan. Transcript, at 10, 31. Naqvi testified that he discussed with them his potential personal liability under the Institutional Funds Act due to the IHS and DMH's investments, and they provided legal advice to him personally. Transcript, at 32-40. Naqvi said he believed Rosenbaum sent him a follow-up email after the call. Naqvi also said the email to which he was referring might have been the August 31, 2015 email referred to above. Transcript, at 81, 89. Rosenbaum checked the records of Drinker Biddle and could not find a follow-up email. Transcript, at 126.

Rosenbaum and Frazer testified that during the call Naqvi did not mention anything about his personal liability or personal situation. They testified that they discussed the points listed in Naqvi's email to Rosenbaum. They testified that they provided legal advice to the CFO of their clients IHS and DMH about the Institutional Funds Act applicability to their clients IHS and DMH. As CFO, Naqvi advised IHS and DMH on investment issues and compliance with the Institutional Funds Act.

Transcript, at 62.  Rosenbaum and Frazer testified that they provided this legal advice as part of Drinker Biddle's representation of IHS and DMH. Transcript, at 121-22, 127-29, 152-57, 159.

Rosenbaum, Frazer, and Sullivan billed MDH and IHS for services rendered at the September 1, 2015, telephone conference with Naqvi. Defendants' Exhibit Sealed Document 2, Billing Records (d/e 44, filed under seal).  IHS and MDH paid the bill for the services.  Transcript, at 125, 158.

On careful review of the evidence, the Court credits the testimony of Rosenbaum and Frazer.  The Court finds that Naqvi asked these attorneys for advice on the matters listed in his August 31, 2015 email to Rosenbaum as CFO of DMH and IHS.  The Court finds that his testimony that he asked about personal representation is not credible.

Naqvi's relationship with attorneys Bilimoria and Rosenbaum were significantly similar.  Each attorney counseled a corporate committee of DMH and IHS.  Naqvi knew them in that context.  Naqvi very carefully inquired about personal representation with Bilimoria.  Naqvi sent the email from his personal email account.  Naqvi did not ask Bilimoria if he could represent him; he asked a hypothetical question about what Bilimoria would do "if" he asked Bilimoria to represent him.  Naqvi understood the sensitive

nature of asking an attorney who represented his employer about personal representation related to his employment.

As previously noted, the DMH and IHS corporate committee which Bilimoria represented was conducting a special investigation based on Naqvi's reports of improper conduct within DMH and IHS including violations of the Institutional Funds Act. Naqvi's email to Bilimoria asks for Bilimoria's representation of Naqvi in the matters concerning his "employment contract or ensuring I am protected". These matters are clearly outside the investigation conducted by the special committee represented by Bilimoria which involved reports of improper conduct within DMH and IHS and violations of the Institutional Funds Act. Naqvi's email to Bilimoria indicates his acknowledgement that an attorney may have a conflict of interest in representing a corporate employee even if the prior representation of the corporation by the attorney did not involve the same subject matter for which a prospective client seeks representation.

Attorney Rosenbaum represented DMH and IHS on matters related to employee benefits and executive compensation and attended meetings of the Plan Administration Committee for those entities. The areas where Naqvi was seeking representation involved his employment contract and Naqvi's protection, which are matters clearly outside the purview of

Rosenbaum's representation of DMH and IHS.  Naqvi did not approach Rosenbaum concerning the alleged request for personal representation of Naqvi using the same precautions with which he approached Bilimoria.  Naqvi did not pose a hypothetical question about "what if" he sought personal representation.  He did not mention personal representation at all in his August 31, 2015 email to Rosenbaum.  Rather, he listed issues that "we have" about MDH and IHS's obligations and liability under the Institutional Funds Act.  The text of the email to Rosenbaum is consistent with the attorneys' testimony and contradicts Naqvi's version of events.

The email to Bilimoria belies Naqvi's testimony that he did not understand that problems could arise from asking his employer's attorney to represent him personally on a work-related issue.  If Naqvi actually had sought personal legal advice from Rosenbaum, he would have been just as cautious and careful as he was with Bilimoria; he was not.  Naqvi's testimony that he sought personal legal advice from Drinker Biddle attorneys Rosenbaum, Frazer, and Sullivan is not credible.

In addition, both Rosenbaum and Frazer testified regarding the conversations which took place during the September 1st telephone call between Naqvi and Rosenbaum, Frazer, and Sullivan.  Naqvi, in his July 15, 2016 letter to Drinker Biddle attorney Laurie Holmes, stated that he had

a witness to the September 1, 2015 call.  Plaintiff's Exhibit 2 to Plaintiff's Memorandum of Law in Support of Plaintiff's Motion to Disqualify Defense Counsel (d/e 37, Ex 2, pg 3), which is ordered SEALED by this Opinion.  During cross-examination at the evidentiary hearing, however, Naqvi admitted that he did not have a witness to the call.  He indicated that his wife knew he would be talking to the attorneys, but was not a witness to the call and did not actually hear what was said.  Naqvi admitted he had no witness that could corroborate his claim as to what was said during the telephone conversation.  Transcript at P 64 (L 23-24) and P 65).  Naqvi's false statement that he had a witness to the call was a material misrepresentation which affects the credibility of his testimony.

The Court finds that Naqvi spoke to Rosenbaum, Frazer, and Sullivan about the topics listed in his August 31, 2015 email to Rosenbaum in his capacity as CFO of MDH and IHS.  Rosenbaum, Frazer, and Sullivan provided legal advice to Naqvi in his capacity as CFO of MDH and IHS, not in his personal capacity.

In light of the Court's factual finding, the Court denies the Naqvi Motion.  Naqvi asks the Court to disqualify Drinker Biddle because he was either a prospective client or a client of Drinker Biddle during his communication with Rosenbaum, Frazer, and Sullivan.  The existence of

an attorney-client relationship "hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." Westinghouse Elec. Corp. v. Ker-McGee Corp., 580 F.2d 1311, 1320 (7th Cir. 1978) (quoting McCormick on Evidence (2d ed. 1972), § 88, p. 179). In this case, Naqvi spoke with Rosenbaum, Frazer, and Sullivan as CFO of IHS and MDH to discuss corporate exposure to liability under a state statute. He sought legal advice for IHS and MDH in his capacity as CFO of IHS and MDH. Naqvi's email indicates that Naqvi did not believe that he communicated with these lawyers to seek personal legal advice, and he did not consult with these attorneys in his personal capacity. His testimony to the contrary is not credible. Naqvi, therefore, was neither a client of Drinker Biddle nor a prospective client of Drinker Biddle. Because Naqvi was neither a client nor a prospective client, no conflict of interest exists for Drinker Biddle. For these reasons, the Naqvi Motion is denied.

  The Defense Motion has some merit. Naqvi talked with Rosenbaum, Frazer, and Sullivan about the applicability of the Institutional Funds Act to investments of MDH and IHS. As such, Naqvi sought legal advice from MDH and IHS' attorneys on matters within the scope of his corporate duties as CFO of MDH and IHS. No one else was privy to these conversations.

Such communications were privileged under the attorney client privilege. See Upjohn Co. v. United States, 449 U.S. 383, 394 (1981). The privilege belonged to MDH and IHS. See Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 348 (1985). Only the officers and directors of MDH and IHS in the exercise of their fiduciary duties could waive the privilege. Id. Naqvi no longer worked for MDH and IHS after November 5, 2015. As such, Naqvi cannot waive the privilege. He cannot use the privileged information in this proceeding.

Naqvi, however, included parts of the privileged communications in his filings. See e.g., Memorandum of Law in Support of Plaintiff's Motion to Disqualify Defense Counsel (d/e 37) (Naqvi Motion Memorandum), Exhibit1, Affidavit of Ali Naqvi, ¶¶ 6-8 (discussing attorney-client privileged communications with counsel), Exhibit 2, Letter from Plaintiff to Drinker Biddle attorney Laurie Holmes dated July 15, 2016, at 1 (discussing attorney-client privileged communications with counsel). A protective order under Rule 26 is the appropriate means to prevent further disclosure of such confidential information. See Fed. R. Civ. P. 26(c)(A) (forbidding disclosure); Weeks v. Samsung Heavy Industries, Ltd., 1996 WL 288511, at *1 (N.D. Ill. May 30, 1996).

The Defendants ask the Court to disqualify Naqvi's attorney because of the improper use of privileged information. The Court will: (1) require Naqvi and his counsel to turn over any original and any copies of documents containing confidential communications with Rosenbaum, Frazer, and Sullivan to Defendants; (2) direct the Clerk to seal Naqvi's Memorandum in support of the Naqvi Motion and attached exhibits; and (3) prohibit Naqvi from using any privileged information he received during the time that he was CFO of MDH and IHS in this case. The Court will not disqualify Naqvi's counsel. She accepted her client's version of events in good faith and proceeded on that basis. The Court has determined that Naqvi was not credible; however, the Court will not punish Naqvi's counsel for believing her client. The Court will not disqualify her.

THEREFORE, IT IS ORDERED that Plaintiff Ali Naqvi's Motion to Disqualify Defense Counsel (d/e 36) is DENIED, and Defendants' Motion for Protective Order (d/e 45) is ALLOWED in part and DENIED in part. The Court orders Naqvi to turn over to Defendants' counsel, within fifteen (15) days of the entry of this Opinion, all original documents and any copies in his possession, custody, or control which include information from his communications with attorneys Rosenbaum, Frazer, and Sullivan, between August 28, 2015 and September 1, 2015. Naqvi is prohibited from using

any information subject to any Defendant's attorney-client privilege that Naqvi received or acquired in any way during the time that he was CFO of MDH and IHS. The Clerk is directed to seal the Memorandum of Law in Support of Plaintiff's Motion to Disqualify Counsel (d/e 37), including all attached exhibits except Exhibit 5, and to unseal Plaintiff's Exhibit 5 admitted at the evidentiary hearing.

ENTER: February 28, 2018

                 s/ *Tom Schanzle-Haskins*
                 TOM SCHANZLE-HASKINS
                 UNITED STATES MAGISTRATE JUDGE