IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ALI NAQVI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 17-3145 |
| | ) | |
| ILLINOIS HEALTH AND SCIENCE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, United States District Judge:

In his Amended Complaint, Plaintiff Ali Naqvi asserts a number of claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, in addition to various state law claims.

Pending is the Defendants' Motion to Dismiss.

Motion allowed in part, denied in part.

## I.    BACKGROUND

At all times relevant to this case, Plaintiff Ali Naqvi was the Executive Vice President and Chief Financial Officer of Defendant Illinois Health and Science ("IHS"), an Illinois not-for-profit corporation; Decatur Memorial Hospital ("DMH"), an Illinois not-for-profit corporation; and Zevacor Pharma,

Inc., n/k/a Zevacor ("Zevacor Pharma"), a Virginia corporation registered as a foreign corporation in Illinois. Zevacor Molecular n/k/a Global Isotopes, LLC, is an Illinois limited liability company.

Naqvi is of South Asian descent and is non-white. Naqvi believes he was the first non-white executive hired in the 100-year history of DMH. According to the amended complaint, Naqvi was exposed to a work place environment that was tainted by overtly discriminatory animus and hostilities toward non-white employees, including Naqvi.

IHS and DMH are governed by various boards of directors and committees. The Boards of Directors of IHS and DMH proscribed rules, regulations, policies, directives and procedures to govern the operations of IHS, DMH and Zevacor.

Defendant Timothy D. Stone, Jr. served as Executive Vice President and administrator of DMH until approximately November 5, 2015. On or about November 6, 2015, Stone was named President and Chief Executive Officer of DMH. Additionally, Stone served as ex-officio member of the Board of Directors of DMH.

Defendant Roy Mosser is Chairman of the Boards of Directors of IHS and DMH. Mosser is also a supplier to DMH.

Defendant Ron Drane is a Director on the Board of Directors of Zevacor. Additionally, the financial institution that primarily employed Drane provided financing to DMH.

Defendant Robin King is a Director on the Boards of Directors of IHS and DMH.

Former Defendant John Funk is a Director on the Boards of Directors of IHS and DMH. Former Defendant Scott Fredericksen is a Director on the Board of Directors of IHS. Former Defendant Ken Smithmier is the President and CEO of DMH, IHS and Zevacor. Additionally, Smithmier was an ex-officio member of the Boards of Directors of IHS and DMH.[1]

Naqvi further alleges that DMH has a Board of Directors who oversaw operations of DMH and the aforementioned directors also served on the Boards of Directors of IHS, DMH and Zevacor.

Naqvi claims he has complied with all administrative requirements and timely filed his complaint.

The Defendants allege there are a number of deficiencies with Naqvi's amended complaint, including the failure to exhaust administrative remedies.

---

[1] The Plaintiff has voluntarily dismissed Funk, Fredericksen and Smithmier as Defendants.

The Defendants also assert Naqvi fails to state a claim and the action is barred under the statute of frauds.

## II.    LEGAL STANDARD

At this stage, the Court accepts as true all of the facts alleged in the complaint and draws all reasonable inferences therefrom. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011). "[A] complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis." *Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (internal quotation marks omitted). Courts must consider whether the complaint states a "plausible" claim for relief. *See id.* The complaint must do more than assert a right to relief that is "speculative." *See id.* However, the claim need not be probable: "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *See Independent Trust Corp. v. Stewart Information Services Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "To meet this plausibility standard, the complaint must supply 'enough fact to

raise a reasonable expectation that discovery will reveal evidence' supporting the plaintiff's allegations." *Id.*

## III. CLAIMS

### A. Count I

In Count I, Naqvi asserts claims of racial discrimination, disparate treatment and hostile work environment against Defendants IHS, DMH and Zevacor. Naqvi was hired on November 18, 2013 and remained employed with IHS, DMH and Zevacor until November 5, 2015, when those entities terminated his employment.

The Defendants allege Count I should be dismissed as to certain Defendants for failure to exhaust administrative remedies. They note that the Plaintiff defines Zevacor to include Zevacor Molecular and Zevacor Pharma, Inc., now known as Global Isotopes, LLC. Paragraph 34 of the Complaint states that Naqvi "has complied with all administrative prerequisites by timely filing Charges of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants, IHS, DMH and Zevacor." It further provides that Naqvi has received right to sue letters as to each filing.

The Defendants assert, however, that the actual EEOC charge does not even reference all entities that the Complaint now defines as "Zevacor." Moreover, the "Particulars" of the charge contain no reference to any Zevacor entity at all. There is no allegation in the charge that Zevacor engaged in any discriminatory conduct and even no allegation that Naqvi was ever employed by Zevacor. Accordingly, the Defendants assert Zevacor should be dismissed as a Defendant in Count I because Naqvi failed to exhaust administrative remedies as to Zevacor.

A Title VII plaintiff is not permitted to raise a claim that has not been raised in his EEOC charge, "unless the claim is reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Whitaker v. Milwaukee County, Wisconsin*, 772 F.3d 802, 812 (7th Cir. 2014). There must be a factual relationship between the claims in order for them to be "reasonably related to one another." *See id*. "This means that the EEOC charge and the complaint must, at minimum, describe the *same conduct* and implicate the *same individuals*." *Id*. at 812-13 (internal quotation marks omitted).

Attached to Naqvi's complaint are three right-to-sue letters from the EEOC referencing each administrative filing. As reflected in Exhibit C, one

of these right-to-sue letters pertains to Zevacor Molecular aka Zevacor Pharma.

Attached as Exhibit A to Naqvi's response to the Defendants' motion to dismiss is a copy of his submission letter sent to the EEOC with Naqvi's charge of discrimination as well as correspondence from counsel for the Defendants, acknowledging the three charges of discrimination filed by Naqvi, including the charge filed against Zevacor, and a copy of the notice of filing of an EEOC charge of discrimination sent to Kevin Horvath, Chief Financial Officer of Zevacor.

In ruling on a motion to dismiss, the Court generally does not look outside the pleadings. "[H]owever, the court may take into consideration documents incorporated by reference to the pleadings and may also take judicial notice of matters of public record." *Milwaukee Police Assoc. v. Flynn*, 863 F.3d 636, 640 (7th Cir. 2017) (internal quotation marks omitted). The Court hereby takes judicial notice of the EEOC charge and right-to-sue letters that have been incorporated by reference to the pleadings.

The Plaintiff alleges that to the extent the allegations of the charge of discrimination filed against Zevacor mirrored the allegations of the charges of discrimination filed against IHS and DMH, the actions arise out of the

same set of facts and circumstances giving rise to the actionable conduct alleged in Naqvi's charges of discrimination, thereby meeting the requirement that a plaintiff exhaust administrative remedies prior to instituting a Title VII action.

Because the record establishes that Naqvi filed an administrative action against Zevacor and it is alleged that the allegations of the charge mirror the allegations of the charges of discrimination against IHS and DMH, the Court concludes that Naqvi has exhausted administrative remedies as to the Zevacor entities as well.

The motion to dismiss Count I will be denied.

B. State law claims

(1) Counts II and III

In Count II of the Amended Complaint, Naqvi asserts an Illinois Whistleblower Protection Act retaliation claim against Defendants IHS, DMH, Zevacor and Boards of Directors of IHS and DMH f/k/a DMH Systems. Count III, a retaliatory discharge common law action, is asserted against Defendants IHS, DMH, Zevacor and Boards of Directors of IHS, f/n/k DMH Systems, and is alleged in the alternative to Count II.

To the extent that Counts II and III are asserted against the "Boards of Directors" of IHS and DMH or the Boards of Directors of IHS f/n/k DMH Systems, the Court notes that "[u]nder Illinois law, a corporation's board of directors is not a legal entity separate and distinct from the corporation itself, and thus is not amenable to suit." *Edwards v. Lake Terrace Condo. Ass'n*, 2011 WL 1548023, at *2 (N.D. Ill. Apr. 21, 2011) (citing *Willmschen v. Trinity Lakes Improvement Ass'n*, 840 N.E.2d 1275, 1280 (2nd Dist. 2005) (dismissing claim on basis that Illinois law does not permit a suit against a corporation's board of directors as a separate legal entity)).

The claims in Counts II and III against the Boards of Directors of IHS and DMH will be dismissed.

### (2) Count IV

Count IV is a state law defamation *per se* claim and is asserted against Defendants IHS, DMH, Zevacor, Stone, Mosser, Drane and King. The count is asserted against those Defendants individually and in their respective capacities as directors and ex-officio members of the Boards of Directors of IHS and DMH.

A plaintiff need not prove actionable damage to his reputation in order to recover for a defamatory *per se* statement. *See Bryson v. News America*

*Publications, Inc.*, 174 Ill.2d 77, 87 (1996).  Because such statements are so obviously and materially harmful to one's reputation, damages may be presumed in those circumstances.  *See id*.  At common law, four categories of statements were considered to be defamation *per se*: "(1) words that impute the commission of a criminal offense; (2) words that impute infection with a loathsome communicable disease; (3) words that impute an inability to perform or want of integrity in the discharge of duties of office or employment; or (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business."  *Id*. at 88.  These common law categories continue to exist under Illinois law.  *See id*.  In order to state a viable claim for defamation *per se*, a plaintiff must identify the defendant's false statements and allege their communication to a third party.  *See Johnson v. Schnuck Markets, Inc.*, 495 F. App'x 733, 736 (7th Cir. 2012)

Naqvi alleges that after his employment was terminated with IHS, DMH and Zevacor, the Defendants published false statements about him to other individuals, including but not limited to some of Naqvi's former clients and partners, and others who were prominent in the banking industry and nuclear medicine industry and the business community in and around Decatur, Illinois, in addition to the State of Virginia and Washington D.C.

Specifically, Naqvi asserts that after his termination on November 5, 2015 and on and around November 9, 2015, Defendant Ron Drane made false statements to former senior management colleagues of Naqvi who worked for IHS that Naqvi had refused to respond to Drane's requests for information during board meetings. Naqvi alleges those statements were false and demeaning to his business reputation of being a competent Chief Financial Officer and being responsive to the requests of his superiors.

Naqvi further claims that false statements were made by the other Defendants at various times on and after November 7, 2015 and continuing to at least January of 2016. Naqvi alleges he learned of those false statements when he received information from friends and colleagues that Defendants, including corporate counsel of IHS, DMH and Zevacor, contacted Ed Blum and other former business associates of Naqvi questioning Naqvi's business ethics, advising Ed Blum and other associates of Naqvi that Naqvi had received illegal compensation for his role in procuring financing assistance for IHS in its funding of the Rose Holdings project.

Naqvi next asserts that Defendants made oral and written statements to his business colleagues, including but not limited to Ed Blum and Jay Zaidi, and bank personnel of Capital One Bank, including but not limited to Anwer

Brkic, who handled the closing of the financing on the Rose Holdings project for Capital One Bank, which were false and defamatory and included the following:

a.  That Naqvi had arranged for his friend Ed Blum to be paid a substantial amount of money to handle procurement of financing on the Rose Holdings project, and that Naqvi had arranged a kick-back or other illegal consideration for his role in retaining Blum to set up the financing on the project; and

b.  That Naqvi did not have an MBA in Accounting from New York Institute of Technology and was otherwise inferior in his handling of the financial matters of IHS, DMH and Zevacor.

Naqvi further alleges that at various times from November 5, 2015 and continuing to at least January of 2016, the Defendants made false, derogatory and defamatory statements about Naqvi to other business associates of Naqvi working at IHS and DMH in Central Illinois, including but not limited to Deborah Brownlee, a former co-employee of Naqvi at IHS, and other persons who were prominent in the banking industry and nuclear medicine and related enterprise industries in and around Decatur, Illinois, as well as in Washington, D.C. and the State of Virginia, as follows:

a.  That Naqvi accepted money and other valuable consideration as a "bribe" during the course of negotiations for the procurement of Rose Holdings Sarl by C-Molecular, a subsidiary of IHS, which asserted actions and conduct that would be considered a criminal offense, and a violation of business ethics, and which assertions were false and derogatory and defamatory and demeaned Naqvi's business reputation and reputation as a good and law abiding citizen and competent business associate;

b.  That Naqvi had taken property of value in exchange for handling various portions of various business transactions, which property of value was allegedly secured and sequestered away in a foreign bank account of Naqvi, which asserted actions and conduct would be considered a criminal offense, and a violation of business ethics, and which assertions were false and derogatory and defamatory and demeaned Naqvi's business reputation as a good and law abiding citizen and competent business associate;

c.  That Naqvi accepted money and other valuable consideration as a second "bribe" during the course of negotiations regarding and relating to the Stock and Asset Purchase Agreement, which asserted actions and conduct would be considered a criminal offense, and a violation of business ethics, and which assertions were false and derogatory and defamatory and

demeaned Naqvi's business reputation and reputation as a good and law abiding citizen and a good and competent business associate;

d.  That Naqvi falsified his employment records and his educational Institution records, including but not limited to assertions that Naqvi did not have an MBA in Accounting and affirmatively spread assertions that Naqvi had only taken two accounting courses during his educational endeavors, which statements were false, derogatory and demeaning and impeded Naqvi's business reputation all to his detriment; and

e.  That Naqvi had furnished materially inaccurate financial information to management and the directors of IHS and DMH, including specifically that Naqvi had provided materially inaccurate projections for Zevacor, which statements were made by all of the individual Defendants during the period from November 10, 2015 and continuing to at least January of 2016, and which statements were false and defamatory and demeaning to Naqvi's business reputation.

Naqvi next alleges that following his termination on November 5, 2015, the Defendants made the foregoing false, derogatory and defamatory statements about Naqvi to others with the specific intent of defaming him and his family, and diminishing Naqvi's business reputation and his reputation as

a law abiding citizen, when the Defendants knew that the statements that Defendants were publishing about Naqvi were false and defamatory and injurious to Naqvi.  Moreover, Naqvi asserts the Defendants made the aforementioned statements with malice and with the specific intent of injuring Naqvi.  Naqvi incurred damages, including but not limited to damages to his professional reputation.

Naqvi claims that, as a direct and proximate result of the acts complained of against the Defendants, he has been damaged and will continue to be damaged by the publication of false statements about Naqvi to others.

The Defendants contend that Naqvi has failed to allege a sufficient defamation *per se* claim against any of the Defendants.  Naqvi does not identify the specific speaker, content, place, time or date for any particular alleged defamatory statement.

The Defendants are correct that Naqvi does not, for the most part, identify which Defendant said what.  Moreover, a few of the statements do not appear to constitute defamation *per se*.  For example, Ron Drane's alleged statement that Naqvi refused to respond to Drane's requests for

information during board meetings qualifies as nothing more than criticism. That statement would not constitute defamation *per se*.

However, other alleged statements do appear to meet that threshold. For example, statements that might qualify as defamation *per se* include: (1) statements questioning Naqvi's business ethics and provided that he had received illegal compensation in procuring financing assistance for IHS; (2) statements alleging Naqvi had received an illegal kick-back or other illegal consideration for his role in retaining Blum to set up financing; (3) that Naqvi violated law and business ethics by accepting multiple bribes; (4) that Naqvi had conducted criminal and/or ethically questionable business transactions and kept property in a foreign bank account; (5) that Naqvi had falsified employment records and educational institution records; and (6) that Naqvi had furnished materially inaccurate financial information to management and the directors of IHS and DMH, including specifically that Naqvi had provided materially inaccurate projections for Zevacor, and these false statements were made by all of the individual Defendants between November 10, 2015 and continuing to at least January of 2016.

Therefore, a number of statements, if true, could constitute defamation *per se*. The allegations are very general as to who said what. Only a few

allegations specify the particular Defendant.  In some cases, the Plaintiff refers to "Defendants" and, with regard to at least one statement, each individual Defendant is alleged to have committed defamation *per se*. However, Naqvi has provided some detail—generally identifying the recipient of the statement and providing a date or at least an approximate time frame.  Moreover, unlike with fraud claims, a plaintiff is not required to meet an enhanced pleading standard to assert a viable claim.

The Court concludes that Plaintiff has provided just enough factual detail to assert a claim for defamation *per se*.  Obviously more information— specifically the identity of the speaker-- will be required in order to withstand a properly supported motion for summary judgment.

Based on the foregoing, the Court will deny the Defendants' motion to dismiss as to the defamation *per se* claim in Count IV.

### (3) Count V

Count V, a state law breach of contract claim asserted against Defendants IHS and DMH, is alleged in the alternative to Counts II and III.

Naqvi alleges that in and around October 2014, he and DMH negotiated terms of an employment agreement.  Thereafter, DMH drafted and tendered a written employment agreement to Naqvi setting forth the material

terms of the negotiated agreement between DMH, IHS and Naqvi regarding and relating to Naqvi's employment as the Executive Vice-President and System Chief Financial Officer of IHS and DMH. Naqvi claims he accepted the terms and executed the final draft of the employment agreement. He provided the document to Ken Smithmier, CEO of DMH and IHS, for execution of the same by DMH. Smithmier advised Naqvi he would take care of it. Naqvi states that he never received a copy of the fully executed employment agreement, despite repeated requests for the document.

Naqvi claims the Defendants are contractually bound to adhere to the terms of paragraph 10.03 of the employment agreement and their refusal to pay Naqvi what he is entitled to under that provision is a breach of the terms of the employment agreement. As a result of this breach, Naqvi alleges he has been damaged in an amount equal to his monthly salary at the rate in effect on November 5, 2015 for the period from November 5, 2015 to June 30, 2017, as provided in paragraph 10.03 of the Employment Agreement.

The Defendants assert that the breach of contract claim is barred by the statute of frauds; also that the attachment of an unsigned employment agreement between Naqvi and DMH (with redlining tending to show it was a

draft under negotiation) as an exhibit to the amended complaint is fatal to Naqvi's claim.

Naqvi states that although he signed the employment agreement and provided it to the Chief Executive Officer of IHS, he did not receive a fully executed copy of his written employment agreement prior to his termination. Moreover, IHS retained the original signed by Naqvi. Naqvi alleges that during the course of discovery, he expects to secure a copy of the finalized employment agreement initially tendered to Naqvi by IHS and signed by Naqvi. Additionally, documents obtained during the course of discovery from the Defendants, including but not limited to e-mail transmissions and minutes of meetings of the Boards of Directors of IHS and DMH, will establish that IHS prepared and tendered to Naqvi for his signing a written employment agreement drafted by IHS and containing all of the material terms agreed to and accepted between IHS and Naqvi.

In *Prodromos v. Howard Sav. Bank*, 295 Ill. App.3d 470 (1st Dist. 1998), the Illinois Appellate Court explained what is required to satisfy the Statute of Frauds as follows:

> In order to satisfy the Statute of Frauds, there must be a writing, not necessarily on a single piece of paper, which is signed by the party to be charged. The writing must contain all essential

terms of the contract, and the signed writing must refer expressly
to the other writings, or the other writings must be connected,
physically or otherwise, to show that they relate to the same
contract. Writings sufficient to satisfy the Statute of Frauds
may include several documents, which may consist of such forms
as letters, notes, and papers. Where a party offers minutes of a
meeting to satisfy the Statute of Frauds, the minutes must be
approved, because without approval, the secretary's signature
is not authorized.

*Id*. at 474 (internal citations omitted). At this stage, the Court is unable to

conclude that the attachment of the unsigned employment agreement between

Naqvi and DMH as an exhibit to the Amended Complaint is fatal to his

claim. Naqvi claims the unsigned employment agreement does not tell the

whole story.

Because a collection of documents can satisfy the Statute of Frauds and

Naqvi suggests he may be able to obtain in discovery documents containing

all of the material terms agreed to and accepted between IHS and Naqvi, the

Court finds that Plaintiff has alleged a plausible claim. Accordingly, the

Court will deny the motion to dismiss the breach of contract claim in Count

V.

(4) Count VI

Count VI, a state law tortious interference with a current business

relationship claim, is asserted against Defendants Stone, Mosser, Drane and

King.  This count is asserted against the Defendants individually and in their respective capacities as directors and ex-officio members of the Boards of Directors of IHS and DMH.

Naqvi contends that he performed all of his obligations in accordance with the provisions of the employment agreement until DMH and IHS unilaterally terminated his employment on November 5, 2015.  However, Stone, Mosser, Drane and King made a number of false, derogatory and defamatory statements about Naqvi to senior executive management personnel of IHS and DMH prior and up to November 5, 2017, with the willful intent of interfering with Naqvi's contractual relationship with IHS and DMH.  Moreover, the willful and intentional acts of the individual Defendants were contrary to the best interests of IHS and DMH and were done to interfere with the relationship Naqvi had with IHS and DMH.  As a result, IHS and DMH terminated the employment agreement of Naqvi and refused to pay him compensation that he was entitled to under the employment agreement.

The Defendants first assert that the Statute of Frauds bars this claim— there could be no tortious interference with a current business relationship because there is no written employment agreement.  The Court earlier

determined that Naqvi had asserted enough to survive the motion to dismiss the breach of employment agreement claim. Therefore, dismissal of Count VI on that basis would also be premature.

"It is generally recognized . . . that to prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." *Fellhauer v. City of Geneva*, 142 Ill.2d 495, 511 (1991).

The Plaintiff claims that Illinois courts do not require a showing that a contract was breached in order to support a claim of interference with business economic advantage; rather, an at-will relationship where there is a mere business expectancy may be enough to support such a claim. *See generally The Film and Tape Works, Inc. v. Junetwenty Films, Inc.*, 368 Ill. App.3d 462, 468 (1st Dist. 2006). Therefore, even if the Court later finds there is no written employment agreement and the breach of contract claim

ultimately fails, it would not necessarily be fatal to a tortious interference with a current business relationship claim.

The Defendants note that "a corporate employer cannot interfere with its own business relationship with its employees." *Vickers v. Abbott Labs.*, 308 Ill. App.3d 393, 411 (1st Dist. 1999). "[T]he tort of interference with prospective advantage requires a showing of action by the defendant toward a third party." *Id.* Corporate officials "are normally privileged against claims that their activities interfered in a third party's relationships with their principals." *Citylink Group, Ltd. v. Hyatt Corp.*, 313 Ill. App.3d 829, 841 (1st Dist. 2000). "To overcome the privilege, plaintiffs must allege or prove that a defendant acted in its own interests and contrary to the interests of its principal, or engage in conduct totally unrelated or antagonistic to the interest giving rise to the privilege." *Id.*

Stone, Mosser, Drane and King are sued individually and in their respective capacity as directors and ex-officio members of the Boards of Directors of IHS and DMH. In most cases, therefore, they would be privileged as to claims involving those entities. Naqvi does allege in the amended complaint that Stone, Mosser, Drane and King acted contrary to the best interests of IHS and DMH. Naqvi also asserts that Stone, Mosser, Drane

and King falsely stated that Naqvi engaged in conduct that would be considered a criminal offense and a violation of business ethics. These allegations, if true, might be considered "conduct totally unrelated or antagonistic to the interest giving rise to the privilege."

Although claims of this sort are rare and do not normally succeed, the Court will allow it to proceed at this stage. The motion to dismiss Count VI will be denied.

### (5) Counts VII and VIII

Count VII, a state law negligent infliction of emotional distress claim, is asserted against Defendants Stone, Mosser, Drane and King individually and in their respective capacities as directors, and ex-officio members of the Board of Directors of IHS and DMH.

The Defendants allege this claim is preempted by the Illinois Workers' Compensation Act, 820 ILCS 305/1 *et seq*. The Plaintiff, in his Amended Complaint, acknowledges that the negligent infliction of emotional distress claim should be dismissed with prejudice. The motion to dismiss will be allowed as to Count VII.

Count VIII, a state law intentional infliction of emotional distress claim, is asserted against Defendants IHS, DMH, Zevacor and Boards of

Directors of IHS, f/n/k DMH Systems, Stone, Mosser, Drane and King, individually and in their respective capacities as directors and ex-officio members of the Boards of Directors of IHS and DMH.

In support of Count VIII, Naqvi states that his job duties included attending Boards of Directors meetings, audit committee meetings, subcommittee meetings and he performed all tasks necessary to apprise the directors of financial and accounting information, analysis and recommendations to the Boards. Naqvi's job duties included duties as assigned by the President and CEO of IHS, DMH and Zevacor. Naqvi was also tasked with performing all duties necessary to meet the reasonable requests of directors of the Boards of Directors of IHS and DMH.

The Plaintiff alleges that, at various times preceding November 5, 2015, the Defendants owed a duty to Naqvi to refrain from intentionally and maliciously causing him emotional distress. However, the Defendants committed one or more or all of the following intentional and malicious acts or omissions:

a. Refused to acknowledge Naqvi's authenticate evidence of wrongdoing by senior management personnel of IHS, DMH and Zevacor, and Defendants were thus complicit in covering up the illicit, illegal and

fraudulent actions of the senior executive management personnel of IHS, DMH and Zevacor, thereby causing Naqvi great emotional distress and despair;

b.  Refused to fully investigate the allegations made by Naqvi to various directors of the Boards of Directors of IHS and DMH regarding and relating to the information evidencing the high risk nature of investing in certain projects by IHS and DMH, including but not limited to investing in Zevacor, notwithstanding Naqvi's presentation of evidence of the fraud and deception committed by senior executives of IHS and DMH;

c.  Ordered Naqvi to refrain from reporting his suspicions regarding the fraudulent and deceptive practices of senior executives of IHS and DMH to the regulatory agencies, including but not limited to the U.S. Department of Justice, notwithstanding Naqvi's direct reporting of his concerns to directors, including but not limited to Robin King;

d.  Failed to launch independent  investigation of the allegations made by Naqvi to senior executives of IHS, DMH and the directors of the Boards of Directors of IHS and DMH;

e.  Commencement of a sham investigation by related affiliates of

senior executives of IHS, DMH and the directors of the Boards of Directors of IHS and DMH to look into the concerns raised by Naqvi to senior executives and directors of the Boards of Directors of those entities with the specific intent of using the sham investigation to impugn the credibility of Naqvi and avoid any investigation of the illicit acts and omissions of senior executive personnel of IHS, DMH and directors of Boards of Directors of IHS and DMH; and

f.   Otherwise acting in a manner inconsistent with Defendants' obligations to adhere to appropriate rules of corporate governance and their obligations owed to Naqvi.

Naqvi alleges that because of these intentional and malicious acts and omissions of the Defendants, he sustained damages, including severe emotional distress and despair.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege facts showing that (1) defendant's conduct was extreme and outrageous; (2) defendant intended to inflict severe emotional distress or knew there was a high probability that the conduct would cause severe emotional distress; and (3) defendant's conduct actually caused severe

emotional distress.  *See Welsh v. Commonwealth Edison Co.*, 713 N.E.2d 679, 683 (Ill. App. Ct. 1999).

The Court believes it is highly doubtful that the allegations contained within Count VIII are sufficiently extreme and outrageous to constitute the intentional infliction of emotional distress.  Naqvi claims that in Counts VI and VIII, he has alleged facts that are sufficiently outrageous and malicious to state such a claim.

Intentional infliction of emotional distress claims rarely succeed. However, the allegations contained in Count VI—particularly the false allegations that Naqvi engaged in criminal activity and/or violated business ethics--could potentially form the basis of an intentional infliction of emotional distress claim.  At this stage, the Court accepts those allegations to be true.  Upon considering those allegations to be true and drawing all inferences in the Plaintiff's favor, the Court concludes Naqvi has asserted sufficient facts to state a claim for intentional infliction of emotional distress.

The motion to dismiss will be denied with respect to the claims asserted against Defendants IHS, DMH and Zevacor and the claims against the individual Defendants.  For the reasons previously stated, the claims asserted

in Count VIII against the "Board of Directors" of IHS and DMH will be dismissed.

Ergo, the Defendants' Motion to Dismiss the Plaintiff's Amended Complaint [d/e 39] is ALLOWED in part and DENIED in part.

The Motion to Dismiss is Denied as to Count I.

The Motion to Dismiss as to the claims asserted against the Boards of Directors of IHS and DMH in Counts II and III is Allowed. The Motion to Dismiss Counts II and III is Denied as to the claims asserted against IHS, DMH and Zevacor.

The Motion to Dismiss is Denied as to Count IV.

The Motion is Dismiss Denied as to Count V.

The Motion to Dismiss is Denied as to Count VI.

The Motion to Dismiss is Allowed as to Count VII. Count VII is Dismissed.

The Motion to Dismiss the claims asserted in Count VIII against the Board of Directors of IHS and DMH is Allowed. The Motion to Dismiss Count VIII is Denied as to the claims asserted against IHS, DMH, Zevacor and the individual Defendants.

This case is referred to United States Magistrate Judge Tom Schanzle-Haskins for the purpose of holding a scheduling conference.

ENTER: June 7, 2018

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge